OPINION OF THE COURT
Meyer, J.
The guarantor of a promissory note is not released by the payee bank’s failure to file a financing statement covering the collateral posted by the debtor when the note contains provisions which permit the bank to reduce or release collateral. Nor is the bank obliged, after its security interest has been invalidated in the payor’s bankruptcy proceeding, to give the guarantor notice that the intended collateral is to be sold by the trustee in bankruptcy. The judgment appealed from should be modified to grant plaintiff judgment for the full amount of the note with interest, without reduction for the value of the intended collateral, and, as so modified, affirmed, with costs to plaintiff in all courts.
I
The appeal and cross appeal are before us as of right pursuant to CPLR 5601 (subd [d]). They bring up for review, as necessarily affecting the final judgment appealed from, two prior nonfinal orders of the Appellate Division. The first of those orders, on defendant guarantors’ appeal from a judgment for plaintiff bank for the full amount of the notes sued on, reversed on the ground that by failing to perfect its security interest in the debtors’ inventory which constituted the collateral for the notes, the bank had discharged pro tanto the guarantors’ obligation (66 AD2d 70) and remitted the matter for determination of the amount of the loss suffered through that failure.
On remand Trial Term dismissed the complaint, holding that plaintiff’s proof of value (the record of the public sale in the bankruptcy proceeding, confirmed by the Bankruptcy Court) was insufficient to establish the value of the inventory, and ordered certain stock certificates put up by defendant guarantors returned to them. On second appeal by plaintiff, the Appellate Division reversed (75 AD2d 574), holding the bankruptcy record to have been prima facie proof of the value of the inventory and rejecting defendants’ *334 contention that plaintiff’s failure to notify them of the time and place of the bankruptcy sale barred recovery by plaintiff.
On remand Trial Term after trial entered judgment for the plaintiff for the amount of the note plus interest, less the amount ($6,800) received on sale of the inventory by the Bankruptcy Court and an additional sum ($660.02) received by plaintiff as a dividend payable to it as a general creditor in the bankruptcy proceeding. The judgment also dismissed defendants’ counterclaim for return of their stock certificates. For the reasons hereafter stated we conclude that (1) plaintiff was under no duty to notify defendants of the bankruptcy sale, (2) plaintiff’s failure to perfect its security interest does not affect defendants’ obligation as guarantors, and (3) plaintiff is entitled to hold the stock certificates until the judgment in plaintiff’s favor is satisfied. We, therefore, direct modification of the judgment appealed from and affirmance as above set forth.
II
The factual setting can be quickly stated. Plaintiff loaned $15,000 on two promissory notes executed by Austin Sporting Goods, Inc., of Fort Lauderdale, Florida, and Stuart G. and Jacqueline P. Austin. Mr. Austin represented to the bank officer that the notes would be indorsed by defendants (his aunt and uncle), and after they arrived in Florida for a visit they did sign the notes. The capacity in which they signed does not appear from the face of the notes, but for purposes of this opinion it will be assumed that it was, as defendants claim, as guarantors. The loan was collateralized by the inventory and equipment of Austin Sporting Goods, Inc. The corporate stock which is the subject of the counterclaim was delivered to the bank by defendants on the day that they signed the notes. Whether it was intended to secure their own or the corporation’s obligations is not clear but as hereafter appears is not material.
A financing statement covering the inventory and equipment and naming Austin Sporting Goods as debtor was filed with the Clerk of Broward County, Florida. Some eight months later Austin Sporting Goods declared bankruptcy *335 and the trustee, having disputed the validity of plaintiff’s security interest, was authorized to and did sell the inventory and equipment free of that interest. Ultimately, the Bankruptcy Court held plaintiff’s inventory lien void, because it should have been, but was not, filed with the Secretary of State of Florida. Plaintiff was, however, permitted to file a claim as a general creditor and as such thereafter received the $660.02 dividend referred to above.
Ill
Defendants’ claim that plaintiff was obligated to give it notice of the bankruptcy sale is predicated upon subdivision 3 of section 679.9-504 of Florida Statutes Annotated[1] which, as it existed at the time the notes were executed, provided in pertinent part that “reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.”[2] Though Florida holds that a guarantor is a debtor within the meaning of that provision (Barnett v Barnett Bank of Jacksonville, 345 So 2d 804 [Fla]; Hepworth v Orlando Bank & Trust Co., 323 So 2d 41 [Fla]; Turk v St. Petersburg Bank & Trust Co., 281 So 2d 534 [Fla] ; accord Chase Manhattan Bank v Natarelli, 93 Misc 2d 78; and see Ann., 5 ALR4th 1291), that holding does not help defendants for it is only a sale by a secured party of which the section requires notice to be given (Sands v Citi *336 zens & So. Nat. Bank, 146 Ga App 853; Magnavox Fort Wayne Employees Credit Union v Benson, 165 Ind App 155). This follows from the fact that subdivision 3 is but part of a section which must be read as a whole.[3] Clear from the caption of the section[4] and from three of its other four subdivisions is it that the section deals only with a sale by a secured party. The caption reads in part “Secured party’s right to dispose of collateral after default”; subdivision 1 states that “A secured party after default may sell”; subdivision 2, that “the secured party must account to the debtor for any surplus”; and subdivision 4 begins “When collateral is disposed of by a secured party after default.” Thus, it is only a sale made by the secured party and not one made by a court-appointed receiver or trustee or by a prior lienholder of which the debtor or guarantor is entitled to notice (Sands v Citizens & So. Nat. Bank; supra; Magnavox Fort Wayne Employees Credit Union v Benson, supra). Plaintiff bank was under no duty to give defendants notice of the sale conducted by the bankruptcy trustee.
IV
The Appellate Division held that the proper construction of section 3-606 of the Uniform Commercial Code is that the creditor’s failure to file a lien resulting in the loss of collateral discharges the surety pro tanto, unless excused by clear and unequivocal language in the agreement between the parties, and that the provisions of the notes to which it referred were not sufficiently clear and unequivocal to constitute the necessary consent. We need not consider the effect of failure to file absent consent, for we hold the provisions of the note to- constitute consent by defendants within the meaning of the code.
Section 673.3-606 of Florida Statutes Annotated provides, in pertinent part, in subdivision (1) :[5]
*337 “The holder discharges any party to the instrument to the
extent that without such party’s consent the holder:
* * *
“(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.”
The purpose of the provision is as concerns a guarantor to protect him against the increase in liability he is subject to if the collateral for the guaranteed loan is not available for payment of the loan or for reimbursement, under general subrogation principles, of the guarantor after he has been required to pay the borrower’s debt. But, as we recognized in Indianapolis Morris Plan Corp. v Karlen (28 NY2d 30), a guarantor may consent to impairment of collateral and, as it noted in Official Comment 2 of the Uniform Commercial Code, such consent “operates as a waiver of the consenting party’s right to claim his own discharge.” The only limitation upon such consent is that set forth in subdivision 3 of section 671.1-102 of Florida Statutes Annotated. That subdivision provides: “The effect of provisions of this code may be varied by agreement, except as otherwise provided in this code and except that the obligations of good faith, diligence, reasonableness and care prescribed by this code may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.”[6] Examining the provisions of the note against this background, we conclude that defendants did, by reason of the provisions in the notes they signed, consent to the claimed impairment.
The note provided that “Additions to, reductions or exchanges of * * * the Collateral * * * may from time to time be made without affecting the provisions of this note”, and that “All parties liable for the payment or collection hereof *338 * * * consent to * * * the release of any obligor or collateral or any part thereof, with or without substitution.” The Appellate Division distinguished a release from a failure to file on the basis that the former is a deliberate act at a future time whereas the latter is a negligent act which occurs at the threshold of the transaction. From a guarantor’s point of view it makes no difference when or with what intent, short of bad faith,[7] the collateral is reduced or released. From his point of view the effect (increase of his potential liability through the decrease of his source of reimbursement) is exactly the same. We agree with the holding of the Maryland Court of Appeals in Etelson v Suburban Trust Co. (263 Md 376, 378-379) that the failure to file a financing statement did not discharge the guarantors, who had consented to “release * * * of any collateral”, because “the Etelsons by agreeing to the broad language of the endorsement limited the protection to which they might have otherwise been entitled under the UCC. It is clear from the express wording of the endorsement that the Bank could have released the collateral at any time without notice to the Etelsons and without the release affecting the Etelsons’ obligation to pay. It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement it could have released the collateral with impunity.” Similar holdings in American Bank of Commerce v Covolo (88 NM 405); Greene v Bank of Upson (231 Ga 287, 288); Haney v Deposit Guar. Nat. Bank (362 So 2d 1250,1252 [Miss]) ; and Lafayette Bank & Trust Co. v Silver (58 Misc 2d 891, 893; see, also, White & Summers, Uniform Commercial Code [2d ed], § 13-15, p 527) appear to us to state the better rule.[8]
*339 Under the foregoing provisions defendants relieved the bank of liability for its inadvertent misfiling of the financing statement with the county clerk. Plaintiff is, therefore, entitled to judgment for the full amount of the notes without reduction for loss of the collateral.
V
With respect to their counterclaim, defendants argue that the corporate shares in question were pledged solely to secure performance of their obligation as guarantors and not as collateral for the note. The Appellate Division appears to have concluded otherwise (66 AD2d 70, 71-72, supra), but the distinction is not material. Had defendants succeeded in their argument that the bank was barred by lack of notice from obtaining any judgment, they would be entitled to return of their stock because neither they nor Austin Sporting Goods, Inc., could be liable to the bank.
Defendants concede, however, that the shares were pledged “as security for the performance of their own obligations”. Until those obligations, as embodied in the modified judgment to be entered in consequence of this opinion, have been liquidated, plaintiff is entitled to retain the security pledged (Fla Stats Ann, § 679.9-105, subd [1], par [d] ; § 679.9-501, subd 1; § 679.9-506; see 72 CJS, Pledges, § 46, subd [g]; §§ 47,48, pp 86-90).
Accordingly, the judgment appealed from should be modified, as above set forth, and, as so modified, affirmed, with costs to plaintiff in all courts.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Judgment modified, with costs to plaintiff in all courts, in accordance with the opinion herein, and, as so modified, affirmed.

. The section corresponds to section 9-504 of the Uniform Commercial Code. The Florida rather than the New York version of the code is referred to because there are slight differences between the two and, the notes having been executed and to be performed in Florida and all parties except defendants being resident in Florida, its version of the code governs. One of the purposes of the code being “to make uniform the law among the various jurisdictions” (Fla Stats Ann, § 671.1-102, subd 2, par c), Florida courts in the interest of achieving uniformity and in the absence of Florida authority to the contrary, review and rely upon the decisions of other code states in interpreting the code (Fritz v Belcher Oil Co., 363 So 2d 155, 158, cert den 372 So 2d 468 [Fla] ; Mason v Avdoyan, 299 So 2d 603 [Fla]), and in reaching the conclusions stated below we have done likewise.

. In 1979 the provision was amended by inserting after the last word of the above quotation the words “if he has not signed after default a conspicuous statement renouncing or modifying his right to notification of sale”. The note contains a provision that “Bank * * * need not collect interest on or principal of any collateral or give any notice with respect to it.” We need not, in view of the conclusion we reach, decide whether prior to the 1979 amendment such a waiver provision was valid under Florida law.

. Official Comment 1 to section 671.1-102 of the Florida Statutes Annotated states: “The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole.”

. Section 671.1-109 of the Florida Statutes Annotated states that “Section captions are parts of this code.”

. Section 3-606 of the Uniform Commercial Code, as enacted in New York, is identical except that it does not capitalize the word “Unjustifiably”.

. Section 1-102 of the Uniform Commercial Code as enacted in New York is identical except for the use of the word “Act” where the Florida provision uses the word “code”. Similar language relating to collateral appears in subdivision 3 of section 679.9-501 of the Florida Statutes Annotated (and Uniform Commercial Code, § 9-501, as adopted in New York), the only difference in language being in the words underscored in the quotation that follows: “but the parties may by agreement determine the standard by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.”

. It is not contended that the filing of the financing statement in the wrong office was an intentional act done in bad faith.

. Plaintiff also argues that the provision of the note which required the bank to exercise reasonable care in the preservation of collateral in its possession but further provided “no omission to do any act not requested by obligors shall be deemed a failure to exercise reasonable care” also operated to excuse its failure since the guarantors never expressly requested the bank to file the financing statement with the Secretary of State. In view of the conclusion that we have reached with respect to the reduction and release provisions of the note, we do not reach that question.