UNITED STATES of America, Plaintiff,

v.

Richard B. HARRIS and Karen F. Harris, Defendants,

and

Maine National Bank, Party-in-interest.

Civ. No. 84–0279 P.

United States District Court,
D. Maine.

Oct. 25, 1985.

Ronald E. Colby, III, Lawrence G. Frier, Sp. Asst. U.S. Attys., Augusta, Me., for plaintiff.

James P. Lansing, Thompson, McNaboe & Ashley, Portland, Me., for Karen F. Harris.

Ellyn C. Ballou, Murray, Plumb & Murray, Portland, Me., for Richard B. Harris.

Arthur A. Cerullo, Drummond & Drummond, Portland, Me., for Maine Nat. Bank.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

This is an action by the Small Business Administration (SBA) to foreclose on real estate property owned by Defendants Karen and Richard Harris. The case comes before the court on cross motions for summary judgment. Defendant Richard B.

Harris admits the plaintiff's allegations which are stated in the following section. Defendant Karen L. Harris answers that she is without sufficient information to admit and therefore denies many of the following statements. However, Karen Harris has not alleged or submitted to the Court any facts which are contrary to or which cast doubt on the truth of these statements. Therefore, there is no genuine issue as to their validity and they will be accepted as facts by the Court pursuant to Rule 56(e) of the Federal Rules of Civil Procedure which states:

> an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

## UNDISPUTED FACTS

On March 14, 1977, Goodall Trailer Sales, Inc. (Goodall), through its President Richard Harris, executed and delivered to Canal National Bank (Canal) a promissory note in the sum of $55,000. As security for the note, Goodall gave Canal a security interest in its accounts receivable, equipment, inventory, fixtures, insurance policies and in a one-story structure which the parties agreed to treat as personalty. At the same time, Karen and Richard Harris executed and delivered a separate guaranty of payment on Goodall's note to Canal National Bank. As security for the guaranty, the Harris' granted, *inter alia,* a second mortgage on their personal residence to Canal National Bank. The loan agreement was made pursuant to an SBA program under which the SBA agreed to pay Canal 90 percent of the amount borrowed in the event of default. A 1982 attachment on defendants' residence is also held by Maine National Bank.

In April, 1979, Goodall defaulted on its note and on June 14, 1979, filed a petition for relief under Chapter 7 of the Bankruptcy Act. On July 13, 1979, the promissory note, guaranty and mortgage were assigned by Canal National Bank to the SBA. On December 19, 1979, SBA honored its 90 percent guaranty to Canal National Bank and took over servicing of the loan.

On June 14, 1979, Thomas Ainsworth, Esq., was appointed receiver of the bankrupt Goodall and on July 17, 1979, Mr. Ainsworth was appointed trustee. *In the Matter of Goodall Trailer Sales,* Bankruptcy Case No. BK–79–353 (D.Me.June 14, 1979) (order appointing receiver with full powers), *In the Matter of Goodall Trailer Sales* (D.Me. Sept. 17, 1979) (order appointing trustee). On October 19, 1979, Thomas Ainsworth made an application to the court to sell the one-story building for $500.00. The application was approved by the court on the same date. *In the Matter of Goodall Trailer Sales, Inc.,* Bankruptcy Case No. BK–79–353 (D.Me.Oct. 29, 1979) (order approving trustee's application to sell certain assets). The trustee Mr. Ainsworth sold all the assets of the bankrupt's estate. Bankruptcy proceedings were terminated on December 17, 1980. Defendant Richard Harris admits that he has not made any payments to the SBA and does not deny that the defendants may be in breach of the agreement.

## DISPUTED MATTERS

Plaintiff asserts that it is entitled to enforce an unconditional guaranty, and to foreclose the real estate mortgage given by the defendants to secure the guaranty. Defendants assert that they were not notified of the sale of Goodall's assets and that they were required to be so notified pursuant to 11 M.R.S.A. § 9–504(3) (1984–1985 Supp.) and therefore plaintiff is barred from enforcing the guarantee. Defendant Richard Harris disputes the amount of indebtedness claimed by the SBA on the bases that the sale of the building for $500 was a commercially unreasonable sale completed on behalf of the SBA and further that the SBA misapplied funds it received from the assets of Goodall and from other guarantors.

In response, plaintiff argues that even if defendants' allegation with respect to not receiving notice of the sale were true, 11 M.R.S.A. § 9–504(3) is not applicable to sales by a trustee under the supervision of the United States Bankruptcy Court, and defendants have waived any right to notice they may have had under the express terms of the guaranty agreement. Further, plaintiff asserts that defendant Richard Harris did receive or was mailed notice of the sale. Additionally, the parties dispute whether a demand for payment has been made.

## DISCUSSION OF LEGAL ISSUES
### APPLICABILITY OF § 9–504(3)

It is clear that defendants are correct that Maine follows a strict construction of the debtor notice requirements of section 9–504(3) of the Uniform Commercial Code and that, if applicable, a deficiency judgment in this case is barred by the seller's failure to notify the debtor, if in fact, no notice was given. 11 M.R.S.A. § 9–504(3). *Camden National Bank v. St. Clair*, 309 A.2d 329 (Me.1973). However, the court has determined that provision to be inapplicable to sales made by a trustee in bankruptcy and not by a secured creditor.[1]

The language of the statute makes clear that § 9–504(3) is applicable to sales by a secured party. The heading of the statute states "secured party's right to dispose of collateral after default; effect of disposition." All of its provisions clearly contemplate a sale by a secured party. Other courts considering this issue have concluded similarly. *Sands v. Citizens & Southern National Bank*, 146 Ga.App. 853, 247 S.E.2d 544 (1978); *Executive Bank of Fort Lauderdale v. Tighe*, 54 N.Y.2d 330, 445 N.Y.S.2d 425, 429 N.E.2d 1054 (1981).

In *Sands*, a temporary receiver was appointed to take possession of a herd of cattle which had been provided as collateral for two loan agreements. The receiver sold the cattle. The lenders filed claims against the debtors and obtained directed verdicts. On appeal, the court held inappli-

cable Code Ann. § 109A–9–504(3) (Ga.L. 1962, pp. 156, 422) (the equivalent provision in the Georgia Code) where the sale of the collateral was not by the secured party, but by a receiver, appointed by a court of equity. The court stated that the debtor should have proceeded by attacking the decree authorizing the sale by the receiver.

In *Tighe*, the plaintiff loaned $15,000 on two promissory notes, one executed by the bankrupt corporation, Austin Sporting Goods, and the other by the defendants as guarantors. The inventory and equipment of the bankrupt provided part of the collateral for the loan. After Austin Sporting Goods declared bankruptcy, the court-appointed trustee disputed the validity of Executive's security interest, and sold the inventory and equipment.

In the proceeding by the plaintiff to enforce the note executed by the defendants as guarantors, the defendants invoked the equivalent provision of the Florida Code § 679.9–504, and claimed that the plaintiff was foreclosed from enforcing the note because it had failed to give the defendants notice of the bankruptcy sale. However, the court held that only a sale by a secured party requires notice to be given under that section. The court based its decision on the language of the section as a whole, including its caption and headings of its subdivisions. The court found that it was clear from the language of the headings of § 9–504 that it was intended to apply only to sales by a secured party.

▮ The pertinent facts of *Tighe* differ from the instant case only in that the lender's security interest was ultimately held void for improper perfection. The Court finds the reasoning in *Tighe* persuasive and agrees that § 9–504(3) is inapplicable in this instance.

Defendant contends that § 9–504(3) also applies to sales made *on behalf* of a secured party, and that the existence of an agency relationship between the trustee in bankruptcy and the secured party consti-

---

1. Therefore, it is not necessary to resolve whether federal or state law applies to an SBA loan transaction, or whether federal law would incorporate the Maine statute.

tutes a disputed question of fact. Defendant cites *Magnavox Fort Wayne Employees Credit Union v. Benson,* 65 Ind.App. 155, 331 N.E.2d 46 (1975), in support of its position.

In *Magnavox,* the plaintiff sought recovery from defendant Magnavox for damages suffered as a result of the sale of plaintiff's car in which Magnavox had a security interest. The car had been damaged in an accident and plaintiff had been unable to pay for the repairs. Magnavox attempted to repossess the car from the repair shop, Allen County Motors, Inc. (ACM), but was unsuccessful. ACM, also a car dealer, attempted to sell the car at auction but was unable to do so. ACM refused to relinquish possession of the automobile to Magnavox and refused a request by Magnavox that ACM sell the car in its normal retail manner. Finally, ACM itself purchased the car, deducted the cost of the repairs and remitted the balance to Magnavox. At that time, Magnavox transferred repossession title to ACM. Neither ACM nor Magnavox gave notice of the sale to the plaintiff. The trial court found that Magnavox had sold the car and should have given notice to the plaintiff under § 9–504(3). The appellate court reversed finding that, while an agency relationship may trigger the notice requirements of § 9–504(3), no such relationship had been established.

■ Assuming it is possible for a trustee in bankruptcy to be held to have acted as an agent for a secured party in completing a judicially authorized sale, it is clear that defendant cannot establish an agency relationship between the SBA and Mr. Ainsworth in the sale of Goodall's assets on the facts of the instant case. The fact most favorable to the defendants is that the sale by the trustee ultimately did not benefit any general creditor but was exclusively for the benefit of the plaintiff. In addition, defendants present a letter from Mr. Ainsworth to the SBA dated July 18, 1979, two months before the sale, inviting the SBA to liquidate directly, assuming it could produce evidence of proper perfection, or to send instructions as to how the trustee should proceed. Defendants also submit Trustee's Amended Final Report, dated December 15, 1979, listing the services provided by the Trustee including the item "sold certain assets for the benefit of the SBA."

Mr. Ainsworth, however, has submitted an affidavit stating that SBA's Proof of Claim evidencing its perfected security interest was filed after the sale of all Goodall's assets except a metal desk. The filing date stamped on the proof of claim by the Clerk of the United States Bankruptcy Court indicates that it was not filed until December 3, 1979. Therefore, even if, as defendants contend, in the instance of a secured creditor, it would have been more customary for the receiver to abandon the collateral, the trustee had not received proper proof of a security interest at the time of the offer to purchase and subsequent sale of the building and its contents. As indicated in the Trustee's application to the court, he had reason to complete the business of liquidating Goodall's assets in a timely fashion since monies had been expended and the estate was small. The statement "for the benefit of the SBA" was factually correct, since by December 15, the perfected security interest had been established. There is no evidence submitted that Mr. Ainsworth considered himself an agent of the SBA or that the SBA even knew of the sale. On these facts, agency cannot be established. *Magnavox* is not contrary to our conclusion. No agency was found in that case and there is less evidence of agency or contact between the parties in this case than in *Magnavox.*

## PLAINTIFF'S PRIMA FACIE CASE UNDER THE FORECLOSURE STATUTE

■ The only inquiry remaining, therefore, is whether plaintiff has sustained its burden on all matters necessary to a judgment for foreclosure. Chapter 14 of the M.R.S.A. § 6321, under which the SBA proceeds, states that the mortgagee must allege the claim by mortgage on the real estate in question, describe the mortgaged premises and state the condition broken and amount due.

618

The court has before it an executed note from Goodall to Canal Bank, a guaranty of that note executed by defendants and a transcript of the account certified by Stephen H. Gilchrist, Vice President of Canal National Bank. Plaintiff also submits an affidavit of the SBA Liquidation Loan Officer Susan L. Sheffield detailing the account history after it was taken over by the SBA. The only area of dispute as to plaintiffs *prima facie* showing, under the undisputed facts (*supra* at 1–2), is the amount due.

SBA makes the following allegations regarding the amount defendants owe, which it supports by the affidavit of Susan L. Sheffield, and the "Lenders Transcript of Account" dated August 27, 1979. After liquidation of the bankrupt's estate, the principal amount of $43,233.68 remained unpaid on the promissory note. In April, 1980, the SBA settled with five limited guarantors of the note for payment of their obligation of $20,000.00. $10,692.30 was credited to interest and $9,307.70 was credited to principal, leaving a balance of $33,-925.98. On November 11, 1982, and January 5, 1983, small amounts from Goodall's bank account were turned over to the SBA and credited to interest. As of August 28, 1984, interest owed on the principal had accrued to $9,467.95, with additional interest accruing at the rate of $9.42 per day. On August 20, 1984, the SBA spent $100 to have the title of the property at 199 Falmouth Street searched, and added this sum to the principal. Thus, plaintiff alleges that the principal amount owed stands at $34,025.98, and interest, as of June 26, 1985, at $12,283.14 with additional interest accruing at the rate of $9.32 per day.

Defendant Karen Harris responds that she is without sufficient knowledge on this matter and therefore denies the amount of indebtedness alleged by plaintiff. Defendant Richard Harris denies that he owes that amount to the SBA and alleges that it has misapplied the funds that it has received. Defendant Richard Harris also alleges that plaintiff has failed to properly account for monies it received and has failed to timely and properly collect monies owned by other guarantors. However, de-fendants have not responded with specific facts tending to show a genuine dispute, but rested on the general denial in their answers. This is insufficient in light of the SBA's well-documented account history.

The same is true for defendants denial of receipt of a demand letter from the SBA. The government has submitted Susan Sheffield's affidavit stating that she made written demand on defendants Richard and Karen Harris on April 17, 1980, and followed up such demand with a letter to both defendants dated August 12, 1980. Copies of this correspondence were submitted to the court, in addition to further correspondence with counsel. Defendants have merely rested on general denials in their answers to the complaint.

Accordingly, it is ORDERED and ADJUDGED that:

(1) Plaintiff's motion for summary judgment is hereby GRANTED;

(2) The conditions of the note guaranteed by the defendants have been breached;

(3) There is due to plaintiff the aggregate sum of Forty-Seven Thousand Four Hundred Thirty-seven Dollars and Four Cents (47,437.04) plus interest thereafter at the rate of nine dollars and forty two cents ($9.42) per day, plus any advances made thereafter, for defendants breach of conditions of the guaranty held by plaintiff;

(4) If defendants, their successors, and assigns do not pay the sum adjudged to be due herein, with interest, within the period of redemption, the United States Marshal, as representative of plaintiff, shall proceed with the sale as provided in 14 M.R. S.A. § 6323. If defendant, her successors, heirs and assigns, pay to plaintiff the sum the Court adjudges to be due and payable to defendant, with interest, within the period of redemption, then plaintiff shall forthwith discharge the mortgage and file a dismissal of the action for

foreclosure with the Clerk of the Court;

(5) The foreclosure sale shall comply in all respects with 14 M.R.S.A. § 6323;

(6) The Plaintiff may bid at the foreclosure sale. If it is the successful bidder, it need not remit any funds to the Marshal provided its bid does not exceed the amount due on its mortgage, costs of this action, and the expenses of sale. Any other purchaser shall deliver the purchase price to the Marshal as provided in the Notice of Sale. The Marshal shall then deliver a Deed conveying the mortgaged premises to the purchaser on behalf of the Plaintiff. Such Deed shall convey the premises free and clear of all interests of the Defendant and any person who may have acquired an interest in the premises after the time that the Court's Certificate with respect to this action was filed in the Cumberland County Registry of Deeds. Thereafter, every such person shall be forever barred and foreclosed of all rights, claims, liens, and equity of redemption in the mortgaged premises;

(7) If someone other than Plaintiff is the successful purchaser, the Marshal shall first pay all costs, including the costs and expenses of the sale; the Marshall shall next pay any real estate taxes, assessments, water or sewer rents which may be due with respect to the mortgaged premises; the Marshall shall then pay Plaintiff United States of America the amount due on its mortgage as determined above, with interest accrued to the date of sale;

(8) The Marshal shall then pay Maine National Bank the principal amount of one-thousand three hundred and sixty nine dollars and eighty-seven cents ($1,369.87) together with judgment interest thereon and fees and costs, if available from the proceeds;

(9) Disposition of the proceeds of the sale shall comply in all other material respects with 14 M.R.S.A. § 6324;

(10) Defendants' motions for summary judgment are hereby DENIED.

So ADJUDGED