FIRST CITY DIVISION OF CHASE LINCOLN FIRST BANK, N. A., Appellant, v CARME S. VITALE et al., Respondents. (Action No. 1.)

FIRST CITY DIVISION OF CHASE LINCOLN FIRST BANK, N. A., Appellant, v VITALE LUMBER COMPANY, INC., Respondent. (Action No. 2.)

Third Department, January 15, 1987

### APPEARANCES OF COUNSEL

*Hancock & Estabrook (Donald J. Kemple* of counsel), for appellant.

*Becker, Card, Levy & Sluzar, P. C. (Bruce O. Becker* of counsel), for respondents.

### OPINION OF THE COURT

LEVINE, J.

In 1965, Catskill Forest Products, Inc. (Forest) borrowed $150,000 from the First National Bank of Hamden under a Small Business Administration (SBA) guaranteed loan program. The loan was evidenced by a promissory note and secured by a mortgage on a building in the Village of Walton, Delaware County, and a security agreement covering Forest's machinery and equipment contained therein. As part of the transaction, defendants executed an unconditional guarantee of payment, on an SBA standard form, under which they granted the lender "full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor * * * and Bank * * * to deal in any manner with the * * * collateral". The guarantors also consented to the "substitution, exchange, or release of all or any part of the collateral". The instrument also authorized the lender "to realize on the collateral or any party thereof * * * without demand, advertisement or notice of the time or place of sale * * * or to forebear from realizing thereon, all as Bank in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be

exercised only to the extent permitted by law". The guarantee further provided for a waiver of defendants' rights to object to any failure of the lender to pursue its remedies against the debtor or the collateral, and of their right of subrogation with respect to the collateral until the lender had received full payment of all liabilities.

In 1970, Forest filed a petition under Bankruptcy Act chapter 11 (11 USC § 1101 *et seq.*), and a receiver was appointed. In 1974, Forest conveyed its real property and its equipment and machinery to Catskill Mills, Inc. (Mills), subject to the SBA mortgage and security agreement, and Mills assumed the unpaid balance of the loan. In 1978, a new repayment schedule was entered into with Mills, at which time defendants confirmed their personal loan guarantees. By 1982 Mills was in default on the debt. The guarantors proposed that another corporation, General Dimension Lumber Services, Ltd. (Dimensions), acquire Mills and that the collateral securing the loan be moved to Dimensions' plant in the Village of Richfield Springs, Otsego County. It was subsequently discovered that, without SBA's consent, the collateral was transferred to Richfield Springs, where it had been commingled by Dimensions, which refused to acknowledge that all of the collateral was in its possession.

While the latter events were taking place, SBA declared the loan to be in default and demanded payment in full from the guarantors, who had been kept informed of all of the developments. SBA assigned its interest in the loan to plaintiff as liquidating agent. Plaintiff initiated replevin proceedings to obtain possession of the collateral. The Sheriff of Herkimer County took possession pursuant to an ex parte order of seizure. Thereafter, at plaintiff's direction, the collateral was moved to the Walton plant of Forest for storage without charge pending a liquidation sale. SBA informed the guarantors of the replevin and its cost, and of its plan to sell the collateral at auction. SBA also invited the guarantors to a meeting to discuss the parties' options in order to minimize any deficiencies.

In April 1983, a public sale was conducted by a reputable and experienced auctioneer, which resulted in receipts totaling some $51,000. The net proceeds after expenses of the sale were approximately $39,000. SBA made a demand for payment of the deficiency by the guarantors which included its expenses of repossession, transfer and storage of the collateral. When payment thereof was refused, plaintiff instituted these

actions to recover the deficiency. It now appeals from the denial of its motions for summary judgment on the complaints.

In denying plaintiff's motions, Special Term ruled that a triable issue of fact was presented as to whether plaintiff, in disposing of the collateral, acted in a commercially reasonable manner, which would defeat plaintiff's right to recover the deficiency under UCC 9-504 (3). The court held that the defense of lack of commercial reasonableness under UCC 9-504 (3) was unwaivable, at least when the collateral is in the hands of the secured creditor, and, hence, was available to defendants despite the terms of the unconditional guarantee.

In our view, partial summary judgment in favor of plaintiff should have been granted. Contrary to the conclusion reached by Special Term, a guarantor may legally surrender his rights and defenses under UCC article 9, in advance of default, by the terms of an unconditional guarantee such as defendants executed here. In *First Natl. City Bank v Cooper* (50 AD2d 518, 519), it was held that a claim that "the bank sold the collateral improperly and at a depressed value" was barred as a defense by the terms of the guarantee. Such a result is also dictated by a line of decisions by the Court of Appeals involving the rights of guarantors in secured and unsecured credit transactions. In *Indianapolis Morris Plan Corp. v Karlen* (28 NY2d 30), the court considered the effect of a similar unconditional guarantee on the guarantor's defense based upon the creditor's release of the collateral security. Contrasting the guarantor's rights with that of the debtor/owner's unwaivable right of redemption (UCC 9-506), the court held that the extent of the guarantor's rights with respect to the collateral were solely as to its value "which may be appropriated to discharge the debt and therefore to discharge his secondary liability, or in the alternative, on payment by him of the debt, to receive the collateral as the creditor's subrogee" *(supra,* at p 33). It was further held that, both under the UCC and at common law, these rights as to the collateral are waivable in advance by the guarantor *(supra,* at pp 34-36). Extending its holding in *Indianapolis Morris Plan Corp. v Karlen (supra),* the court in *Executive Bank v Tighe* (54 NY2d 330) ruled that a consent to release of lien clause in an unconditional guarantee, again similar to the quoted provision of the instruments defendants signed here, constitutes an effective waiver of a guarantor's right to enforce the creditor's statutory obligation not to impair the collateral under UCC 3-606 (1) (b) and 9-501

(1), notwithstanding the provisions of UCC 9-501 (3) making unwaivable the *debtor's* right to redemption and to a commercially reasonable sale *(supra,* at pp 337-338). And in *Citibank v Plapinger* (66 NY2d 90, 92-93), the court held in a case not involving the UCC that, as a matter of pure contract law, an absolute and unconditional guarantee may be phrased so as to foreclose, as a matter of law, defenses and counterclaims of the guarantor based upon fraud, negligence and the failure of a condition precedent.

In summary, the foregoing cases clearly point to the proposition that a guarantor may waive all rights as to the collateral security, "short of bad faith" of the secured party *(Executive Bank v Tighe, supra,* p 338),* by agreeing in the instrument of guarantee to the creditor's total discretion in dealing with the collateral. Since the obligation of the secured creditor to effect a commercially reasonable sale obviously only relates to defendants' rights to maximize the value of the collateral upon the sale in order to minimize their secondary liability, they cannot be heard to complain when, under the guarantee, SBA could validly have " 'released the collateral with impunity' " *(Executive Bank v Tighe, supra,* p 338, quoting *Etelson v Suburban Trust Co.,* 263 Md 376, 378-379, 283 A2d 408, 410).

Nor is the foregoing conclusion on waivability of the right to a commercially reasonable sale affected by the fact that the creditor was in possession of the collateral at the time of the pertinent events. Almost invariably, repossession will have occurred before the sale and UCC 9-504 (3) itself contains no suggestion that repossession in any way affects the rights and duties of the parties. Moreover, the UCC deals in a separate section (UCC 9-207) with the rights and duties of the parties when the collateral is in the secured creditor's possession and, again, the obligation of the creditor thereunder not to impair the collateral under such circumstances is waivable under the clear implication of *Executive Bank v Tighe (supra).*

Equally unavailing to prevent application of the terms of the guarantee as a waiver of the defense asserted under UCC 9-504 (3) is defendants' contention that the language in the instrument, that the powers granted the lender to deal with

---

* See UCC 1-102 (3) and the general definition of "good faith" as "honesty in fact" (UCC 1-201 [19]). Defendants, however, have not presented a scintilla of evidence of any intentional act or bad faith on the part of either plaintiff or SBA throughout the parties' course of dealing *(see, Executive Bank v Tighe,* 54 NY2d 330, 337-338, n 7).

the collateral were "subject to the provisions of any agreement between Debtor and * * * Bank" and were "to be exercised only to the extent permitted by law", is somehow restrictive of the discretion of SBA otherwise granted. Nowhere in defendants' opposing papers have they submitted any agreement with the principal debtor which would have limited SBA's powers to release the collateral. Nor have defendants cited any provisions of law, other than those already considered herein and found not to prevent defendants' waiver of its defense, barring SBA's right to deal with the collateral as it did in this transaction.

Finally, we note that our conclusion that defendants' rights to a commercially reasonable sale were validly waved under the unconditional guarantee conforms to the prevailing view of the persuasively authoritative Federal precedents construing identical SBA or similar instruments (see, *United States v Kurtz*, 688 F2d 827 [3d Cir], *affg without opn* 525 F Supp 734, *cert denied* 459 US 991; *United States v Meadors*, 753 F2d 590 [7th Cir]; *United States v Kukowski*, 735 F2d 1057 [8th Cir]; *United States v Bertie*, 529 F2d 506 [9th Cir]; *United States v Lattauzio*, 748 F2d 559 [10th Cir]; *contra, United States v Terrey*, 554 F2d 685 [5th Cir]; *United States v Willis*, 593 F2d 247 [6th Cir]).

Were we to have concluded otherwise on the effectiveness of the guarantee as a valid waiver of defendants' rights under UCC 9-504 (3), we nonetheless would have found that defendants failed adequately to have raised a triable issue of fact on this defense. As identified by Special Term in its decision, the only arguable objections to plaintiff's procedures that defendants have cited on the issue of commercial reasonableness were the failure of SBA to have obtained an appraisal before the sale and the excessiveness of the cost of replevin and movement of the collateral from Richfield Springs to Walton for storage pending the sale. Contained in plaintiff's papers on the motions are affidavits concerning notice, advertisements, selection of the auctioneer, the basis for the timing of the sale (which was attended by over 50 prospective bidders) and that the prices received represented the fair market value of the property sold. This constituted a prima facie showing of commercial reasonableness (see, *Nadler v Baybank Merrimack Val.*, 733 F2d 182, 184). Defendants' opposing papers fail to demonstrate any deficiency in the procedures under which the sale was noticed, advertised or conducted. Nor do they contain any evidence whatsoever that the prices

received deviated from the fair market value of the collateral at the time of sale. Having failed to contest the sale procedures or the adequacy of the proceeds obtained thereby, the absence of a presale appraisal is insufficient alone to raise any triable issue on commercial reasonableness (see, Nadler v Baybank Merrimack Val., supra; cf. Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp., 81 AD2d 168, lv dismissed 55 NY2d 747).

Likewise, the expenses of repossession and transfer of the collateral to Walton for storage pending liquidation are irrelevant to the issue of commercial reasonableness under UCC 9-504 (3). That section authorizes the secured party, after default, to "sell, lease or otherwise dispose of any or all of the collateral" (UCC 9-504 [1]). The requirement of UCC 9-504 (3) that the "disposition including the method, manner, time, place and terms must be commercially reasonable" clearly relates exclusively to the procedures and other factors attendant to the sale, lease or other disposition of the collateral itself and not to the manner in which the collateral was repossessed or held pending such disposition. Thus, in challenging the excessiveness of the latter expenses, defendants have only raised an issue of fact concerning the reasonableness of such expenses, covered in other provisions of UCC article 9 (see, UCC 9-207 [2] [a]; 9-504 [1] [a]). To the extent that such expenses are established to have been unreasonable, this would not constitute a complete bar to plaintiff's recovery, but only affect the amount of plaintiff's expenses chargeable toward the deficiency (UCC 9-504 [1] [a]). The guarantee does not foreclose defendants from disputing the reasonableness of expenses of repossession, transfer or storage. Accordingly, partial summary judgment should have been granted plaintiff for the full amount of its demand, plus interest, less the $30,447.35 in expenses in dispute, and a trial should have been conducted for determination of the expenses issue.

KANE, J. P., MAIN, CASEY and YESAWICH, JR., JJ., concur.

Order modified, on the law, with costs to plaintiff, by granting plaintiff partial summary judgment in the sum of $73,928.16 plus interest, and, as so modified, affirmed.