CITIZENS STATE BANK OF NEVADA, Missouri, Shareholders Trust, Plaintiff–Respondent,

v.

Marvin W. DAVISON and Betty S. Davison, Defendants– Appellants.

No. 19680.

Missouri Court of Appeals, Southern District, Division One.

Jan. 31, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 22, 1995.

Application to Transfer Denied April 25, 1995.

Thomas L. Williams, Roberts, Fleischaker, Williams & Powell, Joplin, for defendants-appellants.

Howard C. Gosnell, Jr., Ewing, Smith & Hoberock, Nevada, for plaintiff-respondent.

MONTGOMERY, Judge.

Marvin W. Davison and Betty S. Davison (Appellants) appeal from a summary judgment in the amount of $257,500 entered in favor of Citizens State Bank of Nevada, Mis-

souri, Shareholders Trust (Plaintiff).[1] The trial court denied the Appellants' motion for summary judgment and sustained a similar motion in favor of Plaintiff. Earlier, the court had entered a partial summary judgment in Plaintiff's favor.

Summarized, Appellants' points relied on claim the trial court erroneously granted summary judgment in Plaintiff's favor because (1) a settlement agreement between the Bank and Appellants' trustee in bankruptcy operated to discharge Appellants' personal liability on the four notes in question; (2) Plaintiff disposed of secured inventory proceeds without complying with § 400.9–504(3), RSMo 1986, and thereby waived its right to a deficiency judgment; and (3) material facts were in dispute concerning the parties' intent in making the settlement agreement.

The undisputed facts show that the Bank loaned Appellants $675,000 represented by four promissory notes which were secured by security agreements covering the inventory of Appellants' retail shoe business. Only one of the Appellants executed a financing statement in connection with the transaction.

On March 10, 1983, Appellants filed a bankruptcy proceeding under Chapter 11 of the Federal Bankruptcy Act. Extensive litigation followed which questioned whether the Bank had perfected its security interest in Appellants' footwear inventory. In September 1985 the bankruptcy was converted from a Chapter 11 case to a Chapter 7 proceeding, and a trustee was appointed.

The trustee liquidated Appellants' assets, including the footwear inventory, and garnered funds in excess of $800,000. To end the protracted litigation over the Bank's position as a secured creditor, the trustee and the Bank entered into a settlement agreement in June 1986. That agreement provided, in pertinent part, as follows:

Upon approval of the settlement by the Bankruptcy Court, the Trustee shall pay creditor the sum of $387,500.00 in full and complete settlement of both its asserted secured claim and unsecured claim against the bankruptcy estate.

The bankruptcy court approved the settlement agreement in an order dated June 17, 1986. In part, the order recited that the settlement was in the best interests of the estate and the creditors because no funds would be available to any other creditors of the estate if the Bank prevailed in establishing its secured claim in full.

For reasons not revealed by the record, Appellants failed to obtain a discharge in their bankruptcy proceeding. Consequently, Plaintiff commenced the instant action against Appellants in November 1990. Plaintiff's petition alleged the balance due on the four promissory notes amounted to $257,500. Appellants' answer pleaded, *inter alia*, the defense of accord and satisfaction in reliance on the settlement agreement.

Plaintiff supported its motions for summary judgment by the affidavits of James H. Denman (the Bank's former president and later a trustee of Plaintiff) and the bankruptcy trustee, Arthur B. Federman. These affidavits generally state that Appellants did not participate in the settlement negotiations, and the issue of their personal liability was not discussed.

In opposition, Appellants filed affidavits of Richard L. Knight, their bankruptcy attorney, and Appellant Marvin Davison. These affidavits generally state that Appellants and their attorney had input in the negotiations for the settlement agreement. In addition, Appellant Davison stated, "When I was advised that the settlement agreement was in full and complete settlement of all of the bank's claims against my bankruptcy estate, I knew that the bank had agreed to accept that payment as wiping out the entire debt owed to it in consideration of the payment of the sum of $387,500.00 from my assets being administered by the Trustee in my bankruptcy estate."

Appellants' opposition to Plaintiff's motion for summary judgment in the trial court was based on the issues raised here. Appellants

---

1. Plaintiff's predecessor in interest, Citizens State Bank of Nevada, Missouri (the Bank), loaned Appellants the sum of $675,000 represented by four promissory notes which are the subject matter of this lawsuit.

do not contest the validity of the promissory notes or the amount of credit given on them.

Our review of this matter is governed by the standards set forth in *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993).

> When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.
>
> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* at 376 (citations omitted).

As to Appellants' first point, several features of the settlement agreement are clear. First, Appellants are not parties to the agreement. Second, their personal liability is not mentioned therein. Third, their approval of the agreement was not necessary for its implementation. Fourth, according to the settlement terms, the Bank settled its secured and unsecured claims *against the bankruptcy estate.*[2]

Under these circumstances, the trial court ruled that Appellants could not rely on accord and satisfaction as a defense because they were not parties to the settlement agreement. However, Appellants assert that "non parties to an accord and satisfaction can claim the benefit of it because it supplants

the original obligation." In support of this assertion, Appellants rely on *Goetz v. Selsor*, 628 S.W.2d 404 (Mo.App.1982). Their reliance is misplaced.

In *Goetz*, this Court said that "[w]here a creditor accepts from a stranger less than the amount due in full satisfaction of the debt, and that payment is made at the request of the debtor, there is an accord and satisfaction which discharges the entire debt." *Id.* at 406. In the present case, Appellants point to no evidence in the record that the trustee paid the Bank at their request. If Appellants intended to rely on the *Goetz* rule, it was incumbent on them to set forth by affidavit "specific facts showing that there is a genuine issue for trial." Rule 74.04(e).

■ The affidavit of Appellant Marvin Davison does not indicate Appellants requested the trustee to pay the Bank or enter into the settlement agreement. Essentially, Davison's affidavit makes only conclusory statements concerning the effect of the settlement. Conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings. *Austin v. Trotters Corp.*, 815 S.W.2d 951, 953 (Mo.App.1991). In contrast, Plaintiff's affidavits factually assert Appellants did not participate in settlement negotiations, and their personal liability was not discussed.

Lastly, Appellants argue that the settlement "was in law a settlement of the debt owed by Davisons because the words 'claim' and 'debt' have a coextensive meaning in the bankruptcy code. A debtor owes a debt which is the claim of his creditor." They rely on *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

■ Unlike the issue here, the question before the Supreme Court in *Johnson* was "whether a mortgage lien that secures an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a 'claim' subject to inclusion in

---

2. The property of the bankruptcy estate is described in 11 U.S.C.A. § 541. "The commencement of a voluntary, involuntary, or joint bankruptcy case creates an estate. Once the estate is created, the debtor is divested of virtually all property interests held as of the commencement of the case and, in turn, these interests immediately vest in the estate." 9 Am.Jur.2d *Bankruptcy* § 927 (1991).

an approved Chapter 13 reorganization plan." *Id.* at 82, 111 S.Ct. at 2153. The court answered this question in the affirmative.

While the court did say that the word "debt" has a meaning coextensive with that of "claim" under the bankruptcy code, *Id.* at 84 n. 5, 111 S.Ct. at 2154, n. 5, the court was addressing a factual circumstance totally unlike the facts here. Nothing said in *Johnson* convinces us that the language in the settlement agreement operated to release Appellants' personal liability when the plain terms of the agreement related only to "claims" against the bankruptcy estate. In fact, *Johnson* makes clear that a bankruptcy discharge extinguishes enforcement of a claim against the debtor in personam but leaves intact an in rem action against the debtor's property. *Id.* at 84, 111 S.Ct. at 2154. Applying such distinction here requires a finding that the settlement agreement released only the Bank's claim against the property of Appellants which vested in the bankruptcy estate but left intact any in personam claim against Appellants if they failed to obtain a discharge. Point I has no merit.

■ Next, Appellants urge that the Bank's failure to provide them with prior written notice, as required by § 400.9–504(3), RSMo 1986,[3] of the proposed disposition of the secured inventory proceeds resulted in a waiver of the Bank's right to a deficiency judgment.

An understanding of Appellants' argument can best be achieved by quoting the following passage from their brief:

> Prior to the release, [the Bank] held a claim against $838,860.00 proceeds pursuant to its security agreement. In exchange for $387,500.00, it released its claim on the remaining $443,360.00. Clearly the release of its secured claim was a disposition of collateral within the meaning of § 440.9–504(3), R.S.Mo. [The Bank] has admitted not sending debtors written notice of its intent to release the proceeds as required by the above-cited statute.

In support of their novel argument, Appellants rely on *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860 (Mo.App. 1978), and its progeny.[4] These cases consistently hold that a creditor who fails to give the required notice of sale under § 400.9–504(3) waives any right to a deficiency judgment. We seriously question whether this rule applies to the instant facts.

Appellants say that the principles developed in the line of cases following *Gateway* "apply to secured proceeds of liquidated collateral." However, none of the cases cited by Appellants involve notice to the debtor of settlement of a secured creditor's claim against collateral proceeds in the hands of a bankruptcy trustee. Furthermore, none of the cases indicate that a secured creditor, in order to obtain a deficiency judgment, must give the statutory notice before receiving payment from or releasing a claim to collateral proceeds.

3.  In pertinent part § 400.9–504 provides:
    (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .
        . . . .
    (3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . .
        These sections were in effect during all times applicable to this case. Therefore, the 1988 amendments to this statute are not relevant to our discussion.

4.  The remaining cases cited by Appellants are: *Clune Equip. Leasing Corp. v. Spangler*, 615 S.W.2d 106 (Mo.App.1981); *Modern Auto Co. v. Bell*, 678 S.W.2d 443 (Mo.App.1984); *Boatmen's Bank of Nevada v. Dahmer*, 716 S.W.2d 876 (Mo. App.1986); *Lendal Leasing v. Farmer's Wayside Stores*, 720 S.W.2d 376 (Mo.App.1986); *Cherry Manor, Inc. v. American Health Care, Inc.*, 797 S.W.2d 817 (Mo.App.1990); *Lankheit v. Estate of Scherer*, 811 S.W.2d 853 (Mo.App.1991); and *In re 4–S Corp.*, 69 B.R. 499 (Bkrtcy.W.D.Mo.1987).

The focus of § 400.9–504 is upon sale or disposition of the collateral *by the secured party*. After default, subsection (3) describes the various methods of sale or disposition of the collateral and the notice required to be given *by the secured party* concerning the intended disposition. In reading the statute as a whole, it is clear that the required notice pertains only to the sale or disposition of collateral. In short, the statute does not require notice by someone other than the secured creditor nor does it apply to disposition or release of collateral proceeds.

We have found no Missouri case to substantiate our views just expressed. However, the Court of Appeals of New York has considered the notice requirements of § 9–504 of the Uniform Commercial Code under facts close to the instant case. In *Executive Bank of Ft. Lauderdale v. Tighe*, 54 N.Y.2d 330, 445 N.Y.S.2d 425, 429 N.E.2d 1054 (1981), the court held that the sale of collateral must be held *by the secured party* for the notice requirement of the statute to apply.[5] The court said that "[p]laintiff bank was under no duty to give defendants notice of the sale conducted by the bankruptcy trustee." *Id.* 445 N.Y.S.2d at 428, 429 N.E.2d at 1057. After reading the statute as a whole, the court concluded that it is clear from the caption of the statute and its subdivisions that the statute "deals only with a sale by a secured party." *Id.* 445 N.Y.S.2d at 427, 429 N.E.2d at 1056.

The difference between *Tighe* and the instant case is that Appellants here say that notice was required before disposition or release of the collateral proceeds as opposed to notice before the trustee's sale. We find this difference to be insignificant because, as noted in *Tighe*, the statute deals only with a sale or disposition by the secured party. Here, the Bank did not sell or dispose of the collateral.

We also observe that "[t]he purpose of notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser or to see that the sale is conducted in a commercially reasonable manner." James J. White & Robert S. Summers, Uniform Commercial Code § 27–12 (3d ed. 1988). Missouri decisions recognize this view as correct. *See Cherry Manor, Inc.*, 797 S.W.2d at 821; *Modern Auto Co.*, 678 S.W.2d at 445. A notice by the Bank to Appellants concerning release of its claim to collateral proceeds would have served none of these purposes and would have been only an exercise in futility. We hold that, under the facts of this case, the Bank's failure to send the notice required by § 400.9–504(3) does not bar its right to a deficiency judgment. Point II is denied.

In Point III Appellants claim that the summary judgment was erroneously granted because material facts were in dispute concerning the intention of the parties to the settlement agreement. The result reached with respect to Point I renders this point moot. As discussed with respect to Point I, Appellant Davison's affidavit is conclusory in nature and is not sufficient to raise a question of fact in summary judgment proceedings.

The judgment is affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.

---

**5.** Relying on *Tighe*, the court in *Sec. Pac. Nat'l Bank v. Geernaert*, 199 Cal.App.3d 1425, 245 Cal.Rptr. 712 (5 Dist.1988), held that when a sale of collateral is conducted by a court-appointed receiver, a secured party is exempted from the notice provisions of § 9–504 of the U.C.C. The court logically observed that "[w]here the sale occurs under the authority of a receiver or a trustee in bankruptcy, it is made by an independent party under judicial supervision. The secured party no longer controls the time or place of sale." *Id.* 245 Cal.Rptr. at 715–16.