MARINE MIDLAND BANK, Appellant, v CMR INDUSTRIES, INC., et al., Respondents.

Second Department, July 18, 1990

### APPEARANCES OF COUNSEL

*Hayt, Hayt & Landau (Aaron R. Cahn* of counsel), for appellant.

*Pinks, Brooks, Stern, Rubin & Arbeit (Steven G. Pinks* of counsel), for respondents.

### OPINION OF THE COURT

BALLETTA, J.

In the instant case, the individual defendants executed

guarantees for the payments of loans made to the corporate defendant, which agreements contained language purportedly waiving all rights that they may have had with respect to the collateral securing the loans. We take this opportunity to clarify the rule in this Department that where a transaction, such as the instant one, is governed by Uniform Commercial Code article 9, a purported waiver of the right to the commercially reasonable disposition of collateral as set forth in UCC 9-504 is null and void.

On January 18, 1980, the corporate defendant CMR Industries, Inc. (hereinafter CMR) executed a promissory note in the sum of $215,000 which was payable over the course of seven years to the plaintiff, Marine Midland Bank (hereinafter Marine Midland). As collateral for the note, CMR granted Marine Midland a chattel mortgage with respect to all of its inventory.

On the same day, the individual defendants Charles Donald McAllister and Alice Ann McAllister each signed separate Small Business Administration guarantees, Charles Donald McAllister signing as "Donald McAllister Pres", and Alice Ann McAllister apparently signing as "Alice Ann McAllister Secretary", although the word "Secretary" was crossed out either at the time of signing or some other point in time. (These guarantees noted that "Corporate guarantors must execute guaranty in corporate name, by duly authorized officer, and seal must be affixed and duly attested".) In addition, both of the McAllisters signed guarantees of liability to Marine Midland.

CMR made payments through February 1982 but then failed to make the March 1982 payment or any subsequent payments. Marine Midland exercised its option to declare the entire balance immediately due and payable. On March 25, 1983, CMR's attorney wrote to Joseph Perri, the bank officer who was in charge of the loan, informing him that CMR had ceased doing business and that the keys and assets in CMR's building were being turned over to Marine Midland. In pertinent part, the letter stated:

"This letter is to inform you that as of 22 March 1983, CMR Industries, Inc. discontinued doing business. On that date, a meeting was held at Marine Midland Bank in Melville, and you were advised that CMR Industries, Inc. was turning over the assets to the bank for liquidation * * *

"I am enclosing the keys to the premises to CMR Industries,

Inc. located at 1769 Fifth Avenue N., Bay Shore, New York, and by this letter request you to enter upon the premises for the purposes of peaceful repossession of the collateral which secures your loan."

A few weeks thereafter, the Small Business Administration (hereinafter SBA) sent CMR a proposed surrender agreement which CMR did not sign. Rather, CMR, on May 2, 1983, responded to the SBA as follows: "Pursuant to your request, the following is authorization on behalf of CMR Industries, Inc. to allow you to take peaceful possession of all the assets of CMR Industries, Inc. in accordance with the security agreement executed by CMR Industries, Inc. with you and Marine Midland Bank which assets are located at 1769 Fifth Avenue, North Bay Shore, New York. This letter is an agreement by CMR Industries, Inc. to surrender to you possession of inventory, machinery, equipment, furniture, fixtures and other collateral at said premises which are included in the security agreement as aforesaid".

The attorney for CMR also sent a letter to the SBA on the same day which stated in part: "It is the position of my client, CMR Industries, Inc., that Marine Midland Bank and/or the Small Business Administration, should have taken possession of the premises and sold the assets within a short time after 25 March 1983, and that your delay in liquidating the inventory is and has been commercially unreasonable as said term is defined by the Uniform Commercial Code of this State".

The defendants estimated that the value of their inventory at that time was approximately $99,450.

A representative of the SBA visited the premises sometime before June 1, 1983. According to James Ward, a loan officer for the SBA who conducted an inspection of the collateral for the SBA, the collateral was "uniformly old, in poor condition, and obviously disused" and that "the cost of removal, storage and sale would equal, if not exceed, any recovery that could have been made". Mr. Ward concluded his Field Visit Report for the SBA by stating "that it would be my recommendation to the Agency that we abandon this collateral". Thus, the SBA apparently abandoned the collateral without taking any further action, and the collateral eventually disappeared from the premises, seemingly without a trace. In addition, there is nothing in the record to indicate that Marine Midland took any steps to protect the collateral, and Joseph Perri testified at his deposition that he had no knowledge as to its ultimate disposition.

Nearly a year and a half later, Marine Midland commenced the instant action to recover the balance due on the notes, together with interest and attorneys' fees. In their amended answer, the defendants raised four affirmative defenses. As a first affirmative defense, the defendants contended that Marine Midland failed to dispose of the collateral in a commercially reasonable manner. Secondly, they asserted that Marine Midland had retained the collateral in full satisfaction of the debt. The third affirmative defense alleged payment, and the fourth affirmative defense claimed that Marine Midland was an improper party since it had assigned and/or negotiated the promissory notes and guarantees to the Small Business Administration.

In August 1988 Marine Midland moved for summary judgment, contending first that it had no obligation to dispose of the collateral in a commercially reasonable manner, because that obligation was waived by the language of the guarantees. Secondly, Marine Midland claimed that it had never given the defendants any indication that it was willing to accept the collateral in full satisfaction of the debt. Thirdly, the bank contended that the fact that it had received a payment from the SBA (apparently, under a participation agreement with the SBA, Marine Midland was paid a portion of the uncollected balance due on the notes by the SBA) did not relieve the defendants of their obligation on the loan, nor did it deprive the bank from its position as being a proper party to bring suit to collect on the notes.

In opposition to the plaintiff's motion and in support of their own cross motion for summary judgment, the defendants argued that the complaint should be dismissed on the ground that the McAllisters had signed the guarantees as agents of CMR and not in their individual capacities. They also argued that Marine Midland could not recover since it had dealt negligently with the collateral which had been surrendered to it. Finally, the defendants argued that Marine Midland was not a proper party to the lawsuit because paragraph seven of its participation agreement with the SBA required it to assign the loan to the SBA in order to recover under the SBA's guaranteed loan programs.

The Supreme Court, Nassau County, in the order appealed from, denied Marine Midland's motion and the defendants' cross motion. Marine Midland appealed from so much of the order as denied its motion for summary judgment. We now affirm.

■ The defendants' contention that Marine Midland is not a proper party to collect on the notes (insofar as the SBA had paid Marine Midland approximately $125,000 toward the unpaid debt in 1985) is without merit. The guarantee agreements executed by the McAllisters in January 1980 with the SBA specifically provide: "The Undersigned acknowledges and understands that if the Small Business Administration (SBA) enters into, has entered into, or will enter into, a Guaranty Agreement, with Lender or any other lending institution, guaranteeing a portion of Debtor's Liabilities, the Undersigned agrees that it is not a coguarantor with SBA and shall have no right of contribution against SBA. The Undersigned further agrees that all liability hereunder shall continue notwithstanding payment by SBA under its Guaranty Agreement to the other lending institution".

Moreover, paragraph seven of the so-called "participation agreement" between Marine Midland and the SBA provides that even when the SBA pays a portion of the outstanding debt to Marine Midland, Marine Midland may still "continue administration of the loan". In addition, paragraph nine of that agreement further requires Marine Midland to reimburse the SBA in the event it eventually recovers on the loan. Thus, it is clear that Marine Midland is a proper party to pursue the instant action.

■ In addition, the defendants' further contention that Marine Midland's alleged retention of the collateral discharged them from their obligation to pay the deficiency is equally without merit. In *MTI Sys. Corp. v Hatziemanuel* (151 AD2d 649), the defendant had opposed the plaintiff's action to recover payment on a guarantee on the ground that the plaintiff had retained the collateral in satisfaction of the debt. However, this court rejected the defendant's argument, stating: "[T]he appellant [defendant] contends, *inter alia,* that the plaintiff must be deemed to have retained the collateral, and now owns it, in satisfaction of the debt which it secures. The appellant further claims that the plaintiff is precluded from recovering on the guarantee because the plaintiff has not disposed of the property and has failed to serve notice that it proposed to retain the collateral in discharge of the obligation. We disagree. UCC 9-505 (2) calls for written notice of the secured party's proposal to retain repossessed collateral in satisfaction of the obligation" *(MTI Sys. Corp. v Hatziemanuel,* 151 AD2d 649, 650, *supra; see also, Chrysler Credit Corp. v Mitchell,* 94 AD2d 971 [an election to take the collateral in

full satisfaction of the debt will not be implied]; *cf., H. V. Funding v Vakkas & Sons,* 140 Misc 2d 587 [a secured party who retook possession of leased personal property and held it for 1½ years, must be deemed to have elected to take the collateral in full satisfaction of the debt]).

Similarly, under the circumstances of the case herein, in the absence of a written notice by Marine Midland that it intended to repossess the collateral in full satisfaction of the debt pursuant to UCC 9-505 (2), we will not infer such an intent.

Furthermore, contrary to the defendants' contentions, the various loan documents explicitly demonstrate that the McAllisters executed the guarantees in their individual capacities and not their corporate capacities.

■ However, despite the foregoing determinations, we find that there is a triable issue of fact as to whether the disposition of the collateral by the plaintiff was commercially reasonable within the meaning of UCC 9-504.

Preliminary to our discussion of this issue, we must first resolve a threshold argument raised by the plaintiff Marine Midland to the effect that the defendants are collaterally estopped from asserting its negligence with respect to the disposition of the collateral as a defense insofar as that issue was purportedly litigated previously in *United States v McAllister* (661 F Supp 1175). The defendants maintain that the issue of whether Marine Midland acted in a commercially reasonable manner is different from the issue of whether it acted negligently and, moreover, that collateral estoppel should not be applied since CMR was not a party in *United States v McAllister (supra).* "The doctrine of collateral estoppel is based on the notion that it is not fair to permit a party to relitigate an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point (see, e.g., *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 69; *People v Lo Cicero,* 14 NY2d 374, 380; *People v Berkowitz,* 50 NY2d 333, 344). Properly utilized it also serves to conserve the resources of courts and litigants. Because the doctrine is based on general notions of fairness there are few immutable rules" *(Gilberg v Barbieri,* 53 NY2d 285, 291). To invoke the doctrine of collateral estoppel, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have

been a full and fair opportunity to contest the decision now said to be controlling" *(Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71; *see also, Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485).

In *United States v McAllister (supra),* Peconic Bay Industries, Inc. (hereinafter Peconic Bay), acting through its president, the defendant Charles McAllister, executed a promissory note in which it agreed to pay the State Bank of Long Island $85,000 plus interest over a 60-month period *(see, United States v McAllister, supra,* at 1176). The guarantee which was executed on SBA forms explicitly stated: "State Bank of Long Island does hereby assign all rights and interest in this document to the Small Business Administration" *(United States v McAllister, supra,* at 1176).

In March 1983 Peconic Bay ceased doing business and it defaulted on the promissory note for $85,000. (Peconic Bay, which is also owned by Charles Donald McAllister and Alice Ann McAllister operated out of the same building as CMR.) The SBA thereupon commenced an action against both Charles Donald McAllister and Alice Ann McAllister. In opposition to the SBA's motion for summary judgment, the McAllisters argued that the SBA's claim was barred since it did not dispose of the collateral in a commercially reasonable manner as required by UCC 9-504. However, the Federal District Court granted SBA's motion for summary judgment based upon the following reasoning:

"It is contended that the claim [SBA's claim] is barred because the handling of the collateral did not comply with UCC § 9-504, which requires a secured party to dispose of collateral in a commercially reasonable manner and to give the debtor reasonable notification of the sale. This defense is waived, however, by a clause in the guaranty: defendants 'grant[ed] to [the Bank] full power, in its uncontrolled discretion and without notice to the [defendants] * * * to deal in any manner with the [amounts due on the note] and the collateral' * * *.

"Accordingly, I hold that the defendants have 'waived the "defense" of commercial unreasonableness with respect to the SBA's disposition of the collateral securing the loan agreement between SBA and [Peconic Bay].' *United States v. New Mexico Landscaping, Inc.,* 785 F.2d 843, 847 (10th Cir. 1986)." *(United States v McAllister,* 661 F Supp 1175, 1177, *supra.)*

■ While at first blush the SBA agreement in the instant

case appears to contain the same language as found in the agreement in *United States v McAllister (supra),* the instant case involves a different guarantee, a different loan, a different corporation and a different bank. Accordingly, the defendants are not collaterally estopped from contending that the plaintiff disposed of the collateral in a negligent or commercially unreasonable manner *(see generally, Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485, *supra).* It should also be noted that while the Federal court relied upon a decision of the United States Court of Appeals for the Tenth Circuit in reaching the conclusion it did, applicable New York case law leads to a contrary result.

Turning now to the merits of the issue, the plaintiff Marine Midland contends that the defendants have waived their right to object to the disposal of the collateral by virtue of the language contained in their agreement with SBA. Moreover, Marine Midland argues that it made a prima facie showing that it acted in a commercially reasonable manner. The defendants counter that any such waiver is unenforceable, and that, in addition, an issue of fact remains as to whether Marine Midland disposed of their collateral in a negligent manner.

"Under both the common law and the Uniform Commercial Code, a secured party has a duty to exercise reasonable care in the custody and preservation of collateral in its possession *(see, Federal Deposit Ins. Corp. v Marino Corp.,* 74 AD2d 620; *Grace v Sterling, Grace & Co.,* 30 AD2d 61; Uniform Commercial Code § 9-207 [1]). The obligation remains the same regardless of whether the secured party came into possession of the property before or after the debtor's default (Uniform Commercial Code § 9-207, comment)" *(Matter of Bud-Lee Ski Centers v State of New York,* 116 AD2d 715, 716).

In the instant case, the guarantees executed by the McAllisters provided:

"The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers * * *

"(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the

event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law".

Under UCC 9-504 (1), "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing". Subdivision (3) of UCC 9-504 goes on to provide that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable".

The question that arises is whether the defendants have waived the protection of UCC 9-504 by the terms of their guarantees.

In *Federal Deposit Ins. Corp. v Marino Corp.* (74 AD2d 620), the individual defendants were guarantors of the obligations of the Frank L. Marino Corp. In 1973, the corporation was unable to pay its obligations on its promissory note, and the individual defendants requested that Franklin National Bank liquidate the collateral. Instead of complying with the request, the bank renewed the note. In October 1974 the plaintiff took over the assets of the Franklin National Bank, and the defendants requested that the collateral be sold. The plaintiff declined, and the collateral subsequently declined in value. The defendants argued that the failure to liquidate the collateral on their request was negligence and a breach of the lender's duty to preserve and protect the collateral. While the plaintiff contended that the defendants, by the express terms of the guarantees, waived any right to assert a counterclaim or to require the bank to liquidate the collateral, this court found that a genuine issue of fact remained and denied the plaintiff's motion for summary judgment on the basis that the failure to liquidate, if negligent, was a breach of a secured party's duty to use reasonable care in the custody and preser-

vation of collateral. Specifically, this court held: "A waiver of the right to assert a setoff or counterclaim is not against public policy and has been enforced by this court (see *Bank of New York v Cariello,* 69 AD2d 805). However, such a waiver will not be enforced so as to bar a viable setoff or counterclaim sounding in fraud (see *Sterling Nat. Bank & Trust Co. of N. Y. v Giannetti,* 53 AD2d 533). So, too, where a viable setoff or counterclaim is asserted based upon the creditor's negligence in failing to liquidate collateral upon the guarantor's demand, such a waiver provision will not be enforced. To enforce such a waiver provision in the face of a triable issue of fact as to the creditor's negligence would allow a creditor to shield itself from its own tortious conduct (cf. *Sterling Nat. Bank & Trust Co. of N. Y. v Giannetti, supra).* A waiver in a guarantee limiting a creditor's responsibility as to collateral is enforceable as well (see *Indianapolis Morris Plan Corp. v Karlen,* 28 NY2d 30). Where, however, a demand is made of the creditor to liquidate the collateral and subsequent to the refusal to liquidate the collateral substantially declines in value, the failure to liquidate, if negligent, is a breach of the secured party's duty to use reasonable care in the custody and preservation of collateral (see Uniform Commercial Code, § 9-207, subd [1]). A secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement (Uniform Commercial Code, § 1-102, subd [3]). While the parties may agree to determine the standards by which the performance of such obligations is to be measured (see Uniform Commercial Code, § 1-102, subd [3]), the waiver clause in the guarantees at bar relieves the bank from virtually all responsibility with respect to the collateral and, as such, cannot be enforced (see *Executive Bank of Fort Lauderdale v Tighe,* 66 AD2d 70)" *(Federal Deposit Ins. Corp. v Marino Corp., supra,* at 620-621).

In sum, this court found that the plaintiff's alleged negligence in failing to dispose of the collateral was an issue which could not be waived despite the guarantees.

Although the decision in *Federal Deposit Ins. Corp. v Marino Corp. (supra),* was centered upon the duty to preserve collateral, as set forth in UCC 9-207, this court several years later extended its rationale to the area of the commercially reasonable disposition of collateral called for by UCC 9-504.

In *Federal Deposit Ins. Corp. v Forte* (94 AD2d 59), the plaintiff attempted to foreclose on a mortgage which had been assigned to the lending bank (Franklin National Bank) as

collateral for a loan which eventually went into default. When the foreclosure sale of the mortgaged real property still left an amount unpaid, the plaintiff commenced an action to ratify the foreclosure sale and for a deficiency judgment against the individual guarantors of the loan. In simple terms, this court essentially held that since the mortgage was used as collateral for the defaulted loan (which was quite distinct and separate from the loan for which the mortgage had been given), it was to be treated as any other form of collateral, and, therefore, UCC article 9 applied to the transaction. The foreclosure sale of the mortgaged property was, therefore, in effect, a disposition of collateral governed by the provisions in UCC 9-504, requiring any disposition to be commercially reasonable.

Significantly, the plaintiff in *Federal Deposit Ins. Corp. v Forte (supra)*, argued that the waiver clauses found in the guarantees executed by the individual guarantors relieved it of all duty to dispose of the collateral in a commercially reasonable manner. This court rejected that argument, stating: "A secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement (Uniform Commercial Code, § 1-102, subd [3]). While 'the parties may by agreement determine the standards by which the performance of such obligations is to be measured' (Uniform Commercial Code, § 1-102, subd [3]), the parties may not agree to relieve the secured party from all responsibility with respect to the collateral *(Federal Deposit Ins. Corp. v Marino Corp.,* 74 AD2d 620; *Executive Bank of Fort Lauderdale v Tighe,* 66 AD2d 70). The waiver clauses herein have this prohibited effect and thus may not be enforced" *(Federal Deposit Ins. Corp. v Forte,* 94 AD2d 59, 67, *supra).*

This is in accord with the decision of the Appellate Division, Fourth Department, in *Marine Midland Bank v Kristin Intl.* (141 AD2d 259), where the defendants borrowed over $600,000 from the plaintiff, with one of the loans being made under the SBA's Guaranteed Loan Program. The corporate defendant secured the loan with its inventory, and the individual defendants executed standard SBA and bank guarantees which contained provisions (similar to those involved in the case at bar) giving the plaintiff the right to dispose of the collateral in any manner, at the plaintiff's discretion. After the corporate defendant defaulted, it allowed the plaintiff to take peaceful possession of all of the collateral, which the plaintiff sold at a public auction for $37,440, leaving a deficiency of $400,000. The plaintiff brought suit against the individual guarantors to

collect the deficiency. When the plaintiff moved for summary judgment on the basis of the notes and the guarantees, the individual defendants opposed on the grounds that the defense of commercial reasonableness of the disposition of the collateral was one that could not be waived.

In sustaining the position taken by the defendants, the Fourth Department wrote:

"On appeal, [the plaintiff] Marine argues that a guarantor may legally and effectively surrender his rights and defenses under Uniform Commercial Code article 9, in advance of default, by the terms of an unconditional guarantee, citing the Third Department's recent decision in *First City Div. of Chase Lincoln First Bank v Vitale* (123 AD2d 207). We decline to follow the Third Department's holding and reach a contrary conclusion. In our view, a guarantor is a 'debtor' within the definition set forth in Uniform Commercial Code § 9-105 (1) (d), and, therefore, a guarantor may not waive the defense of commercial reasonableness, pursuant to Uniform Commercial Code § 9-501 (3). * * *

"Our research of the question has revealed that most courts that have held that a guarantor is a debtor for article 9 purposes have further held that a guarantor may not waive the defense of commercial reasonableness * * *. Uniform Commercial Code § 9-504 (3) provides that the secured creditors' postdefault disposition of the collateral 'must be commercially reasonable'. Uniform Commercial Code § 9-501 (3) provides that '[t]o the extent that they give rights to the *debtor* * * * the rules stated in the sections and subsections referred to below [including § 9-504 (3)] *may not be waived or* varied'. (emphasis added). Therefore, our determination that a guarantor is a debtor requires the further conclusion that the guarantor's right to have the collateral disposed of in a commercially reasonable manner may not be waived" *(Marine Midland Bank v Kristin Intl., supra,* at 261-262).

■ The Fourth Department's decision in *Marine Midland Bank v Kristin Intl. (supra),* is clearly applicable in the instant case and fully supports the conclusion already reached by this court, to wit: that the UCC requirement that any postdefault disposition of collateral be commercially reasonable *(see,* UCC 9-504 [3]) may not be waived. Moreover, such a result is fully consistent with the trend first established by this court in *Federal Deposit Ins. Corp. v Marino Corp.* (74 AD2d 620, *supra),* and extended in *Federal Deposit Ins. Corp. v*

*Forte* (94 AD2d 59, *supra; see also, Federal Deposit Ins. Corp. v Forte,* 144 AD2d 627; *First Bank & Trust Co. v Mitchell,* 123 Misc 2d 386; *cf., First City Div. of Chase Lincoln First Bank v Vitale,* 123 AD2d 207).

Having determined that the defense of the commercial reasonableness of the disposition of the collateral is one which may not be waived, we agree with the Supreme Court's determination that there are triable issues of fact which preclude the granting of summary judgment to either side *(see, MTI Sys. Corp. v Hatziemanuel,* 151 AD2d 649, *supra* [triable issue of fact exists as to whether plaintiff disposed of collateral in good faith and commercially reasonable manner]). While the defendants contend that the collateral was worth approximately $99,450 and that the plaintiff or the SBA should have sold it rather than abandoning it, the plaintiff asserts through SBA loan officer James Ward that the collateral was uniformly old and in poor condition and that the cost of removal would have exceeded its resale value.

Accordingly, we agree with the Supreme Court, Nassau County, that outstanding issues of fact remain, since the issue of whether collateral was disposed of in good faith and in a reasonable manner is one which may not be waived *(see, Marine Midland Bank v Kristin Intl.,* 141 AD2d 259, *supra; Federal Deposit Ins. Corp. v Forte,* 94 AD2d 59, *supra; Federal Deposit Ins. Corp. v Marino Corp.,* 74 AD2d 620, *supra; cf., First City Div. of Chase Lincoln First Bank v Vitale,* 123 AD2d 207, *supra).*

Accordingly, the order is affirmed insofar as appealed from, with costs.

RUBIN, J. P., ROSENBLATT and MILLER, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.