■ BARCLAYS BANK OF NEW YORK, N. A., Appellant, v HEADY ELECTRIC COMPANY, INC., et al., Respondents.—Harvey, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Jiudice, J.), entered September 5, 1990 in Dutchess County, which *inter alia,* partially granted plaintiff's motion for summary judgment.

On December 30, 1983, defendant Heady Electric Company, Inc., by its president, defendant Brian T. Heady (hereinafter Heady), executed a secured note in favor of plaintiff in the amount of $150,000. Heady and his wife, defendant Coral A. Heady, also executed a guarantee agreement in conjunction with this transaction. The proceeds of this note and the others that followed were rolled over and eventually consolidated in a note executed on July 31, 1985 in the amount of $340,130. Under the terms of the note and the accompanying commitment letter, plaintiff was allowed to declare default and accelerate repayment of the loan upon the happening of certain specified events. In December 1985, although interest payments were timely and the notes had not matured, plaintiff deemed itself insecure due to the financial condition and conduct of Heady and his company, declared default and

accelerated repayment of the loan. In an attempt to reduce the outstanding principal balance due on the notes, plaintiff set off certain accounts and repossessed and sold at auction the collateral belonging to Heady's company.

Plaintiff commenced this action in January 1986 seeking to recover the outstanding balance due on the loans, amounting to approximately $185,000. Defendants answered and asserted 11 counterclaims and three affirmative defenses. These counterclaims and defenses chiefly concerned allegations by defendants that plaintiff acted improperly in seizing and disposing of defendants' collateral and assets following plaintiff's declaration of default. Defendants also sought $1,487,000 in actual damages and $50,000,000 in punitive damages. In November 1989, plaintiff moved for summary judgment dismissing defendants' affirmative defenses, counterclaims and claims for punitive damages, and, further, brought a separate motion to strike defendants' demand for a jury trial on the basis that defendants had allegedly waived that right. Supreme Court denied plaintiff's motions in all respects except that the court dismissed the individual claims for punitive damages. Supreme Court did, however, leave the request for punitive damages in the ad damnum clause. This appeal by plaintiff followed.

Initially, plaintiff contends that Supreme Court erred in denying its motion to strike defendants' demand for a jury trial. Between December 1983 and July 1985, Heady executed six secured notes and two personal guarantees in connection with the funds and line of credit extended to his company by plaintiff. Each of these documents contained a clause waiving the right to a jury trial in any litigation where plaintiff was an adverse party. In opposing plaintiff's motion to strike, however, defendants argued that Heady was allegedly unaware of the waiver provisions in the documents and, therefore, should not be bound by them. Supreme Court denied plaintiff's motion, ruling that the waiver provisions in the various notes and agreements were ineffective.

We disagree. As a general proposition, contract provisions waiving a jury trial "are valid and enforceable, unless adequate basis to deny enforcement is set forth by the challenging party" *(Fordham Univ. v Manufacturers Hanover Trust Co.,* 145 AD2d 332, 333; *see, Armstrong Co. v Nechamkin,* 55 AD2d 520). The right to a jury trial may even be waived "in an instrument other than that representing the agreement upon which the action is founded" *(Franklin Natl. Bank v Capobianco,* 25 AD2d 445). Here, defendants have set forth no

adequate basis to set aside the waivers. Heady testified that either he or his attorney read all documents to be signed. Moreover, even if Heady had neglected to read the documents containing the waiver provisions, this alone would not affect their validity *(see, James Talcott, Inc. v Wilson Hosiery Co.,* 32 AD2d 524, 525).* Although defendants contend that the waivers were actually buried in the small print of lengthy documents, a review of these papers reveals that each of these documents is only one page long and the waiver clause, printed in the same size type as the rest of the document *(see, supra),* appears only a few lines above Heady's signature. Accordingly, defendants' claim that the waiver provision was hidden in the various agreements lacks merit *(see, Kimi Jewelers v Advance Burglary Alarm Sys.,* 161 AD2d 273). As for defendants' contention that they should not be bound by the waivers because their counterclaims largely sound in intentional tort, as opposed to breach of contract, this argument must fail because, unlike the situation presented in *Cohn v Adler* (139 AD2d 481, 482), the claims contained in defendants' various counterclaims are actually based on plaintiff's alleged violation of various provisions of the underlying agreements. Inasmuch as the claims asserted are tied to the loan agreements, Supreme Court erred in denying plaintiff's motion to strike the jury demand.

Next, the parties dispute the validity of provisions contained in the various agreements providing for the waiver of defendants' right to interpose setoffs and counterclaims. Plaintiff contends that Supreme Court erred in not strictly enforcing these waivers and dismissing all of defendants' affirmative defenses and counterclaims. This argument has some merit. It must be remembered, however, that although "[a] waiver of the right to assert a setoff or counterclaim is not against public policy", the enforceability of such provisions depends on the nature of the claims involved *(Federal Deposit Ins. Corp. v Marino Corp.,* 74 AD2d 620; *see, European Am. Bank v Mr. Wemmick, Ltd.,* 160 AD2d 905, 906; *Marine Midland Bank v CMR Indus.,* 159 AD2d 94, 104; *Bayside Fuel Oil Depot Corp. v Savino Oil & Heating Co.,* 133 AD2d 658, 659).

For example, a waiver provision will not be enforced to bar a viable setoff or counterclaim sounding in fraud or one which is based upon the creditor's negligence in failing to liquidate collateral upon the guarantor's demand *(see, European Am. Bank v Mr. Wemmick, Ltd., supra,* at 906-907; *Marine Midland Bank v CMR Indus., supra,* at 104; *Federal Deposit Ins. Corp. v Marino Corp., supra,* at 620-621). Further, although a

waiver limiting a creditor's responsibility as to collateral may not be enforceable, the creditor may not use such a provision to shield itself from liability if it breaches "the secured party's duty to use reasonable care in the custody and preservation of collateral" *(Marine Midland Bank v CMR Indus., supra,* at 104). It is beyond cavil that "[a] secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement" *(supra).*

Applying these principles to the matter at hand, it is our view that only defendants' first and second affirmative defenses alleging violations of UCC 9-503 and 9-207, respectively, and defendants' fifth, seventh, eighth, ninth and tenth counterclaims, also alleging UCC violations and sounding in fraud, survive enforcement of the waiver clause. Supreme Court erred in not dismissing the remaining counterclaims and affirmative defense. As for plaintiff's contention that any surviving counterclaims should be dismissed on summary judgment grounds, we cannot agree. Defendants' motion papers raise triable issues of fact concerning, among other things, whether plaintiff and its agents utilized reasonable care in the custody, preservation and disposal of the seized collateral *(see,* UCC 9-207) and whether these entities violated the self-help provision contained in UCC 9-503. Because these and other issues raised cannot be resolved on the papers as a matter of law, their resolution must await trial *(see,* CPLR 3212 [b]).

Nevertheless, although we agree with Supreme Court that certain of the counterclaims interposed by defendants should stand, we find no basis for the denial of plaintiff's motion to strike defendants' request for punitive damages from the ad damnum clause. Although it is true that punitive damages can be recovered in fraud claims *(see, Chase Manhattan Bank v Perla,* 65 AD2d 207, 211), here, even assuming that plaintiff did indeed act in a wanton, willful or malicious manner as defendants allege, defendants allege only private wrongs; they " '[do] not seek to vindicate a public right or deter morally culpable conduct' " *(Quail Ridge Assocs. v Chemical Bank,* 162 AD2d 917, 921, *lv dismissed* 76 NY2d 936, quoting *Halpin v Prudential Ins. Co.,* 48 NY2d 906, 907). Accordingly, Supreme Court erred in failing to grant plaintiff's motion in this respect in its entirety.

The remaining arguments raised by the parties have been examined and found to be unpersuasive. In our view, Supreme Court properly denied plaintiff's motion for summary judgment with respect to defendants' liability in the main action.

Defendants' opposition papers and the exhibits attached thereto adequately assert defendants' position that there was no reasonable basis on which plaintiff could have deemed itself "insecure" or concluded that defendants' financial responsibility had "become impaired". Because this proof sufficiently raised questions of fact concerning the reasonableness of plaintiff's declaration of default, a trial is necessary *(see, Canterbury Realty & Equip. Corp. v Poughkeepsie Sav. Bank,* 135 AD2d 102, 109).

Mahoney, P. J., Levine, Mercure and Crew III, JJ., concur. Ordered that the order modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for summary judgment dismissing defendants' third affirmative defense, first through fourth, sixth and eleventh counterclaims and the claim for punitive damages, and denied plaintiff's motion to strike defendants' jury demand; said motions granted to that extent, said defense and claims dismissed, and jury demand stricken; and, as so modified, affirmed.