Fremont-Smith, J.
The plaintiff, Graphics Leasing Corporation (“Graphics”) has brought this action against National Westminster Bank USA (“NatWest”) for damages it allegedly suffered when NatWest failed to release certain collateral which allegedly exceeded the loan formula found in the parties’ loan agreement. NatWest has counterclaimed and brought a third-parly complaint against Baystate Leasing Associates II, Inc. (“Baystate,” which is Graphics’ sister corporation and party to the loan agreement), Frank Lupacchino, president of Baystate, and Harold Gold, president of Graphics. Gold and Lupacchino had executed personal guaranties on Baystate and Graphics’ agreement to pay an indemnity fee should the loan be prepaid. The matter is before the court on NatWest’s motion for summary judgment as to the claims asserted against Lupacchino and Gold as guarantors.
BACKGROUND
The following facts are not in dispute. On June 1, 1989, Graphics and Baystate executed Term Notes and Security Agreements pertaining to a line of credit extended by NatWest to the two companies. Personal guaranties were executed by Gold and Lupacchino. Paragraph 1 of the Term Note, entitled “Prepayment,” states in pertinent part, “Subject to the indemnity agreement set forth in paragraph 2 hereof, the Borrower may prepay any loan in whole or in part, at any time and from time to time without premium or penalty." Paragraph 2, however, entitled “Indemnity,” provides in relevant part, “(t]he Borrower hereby indemnifies the Bank against any loss or reasonable expenses which the Bank may sustain or incur ... as a consequence of the receipt... by voluntary prepayment or otherwise prior to the maturity thereof, including, but not limited to, . . . (ii) any loss or margin or reemployment of the funds so received or recovered.” Lupacchino claims that before executing the documents, a NatWest assistant vice president represented to him that there would be no prepayment penalty should the loans be paid off early.
The guarantees signed by Gold and Lupacchino provide that
[t]he obligations of the Guarantor hereunder, and the rights of the Bank in the Collateral, shall not be released, discharged or in any way affected, nor shall the Guarantor have any rights against the Bank by reason of the fact that the Bank fails to preserve any rights in the Collateral or take any action whatsoever in regard to the Collateral... nor by reason of the fact that any of the Liabilities may be involved or unenforceable against the Borrower
The Guarantees further provide that “[t)he Guarantor waives the right to interpose counterclaims or setoffs of any kind and description in any litigation arising hereunder . . . ,” and state that they are to be interpreted in accordance with the laws of the state of New York.
The parties agreed on a loan formula in which the principal amount of the Term Loans would not exceed 75% of the aggregate leases to be given to NatWest as collateral. Graphics and Baystate drew from the line of credit on four separate occasions during 1989 and 1990, pledging 106 leases as collateral. The term of each loan advance was thirty-six months. Lupacchino claims that on several occasions NatWest allowed Baystate to substitute new leases for those held by NatWest. In addition, Lupacchino claims, NatWest established a course of conduct whereby it would release certain leases when it deemed the remaining collateral to be sufficient.
On February 21, 1992, Baystate requested that NatWest release from the collateral certain leases which Baystate intended to sell to a third party, the proceeds of which were to be used to repay the first two loans. NatWest allegedly failed to release all the requested leases. The first two loans were, however, paid in full on March 11, 1992, before the expiration of the thirty-six month repayment term.
On March 17, 1992 Graphics requested that Nat-West release the collateral which exceeded the loan formula, and designated certain leases that it wished to sell to a third party. NatWest, however, refused to release the allegedly excess collateral. In order to *18 obtain the desired leases Baystate took out a loan with a third-party lender at an interest rate exceeding the rate charged by NatWest, and paid off the outstanding two loans with these loan proceeds.
On March 31, 1992, due to the prepayments of the first two loans, NatWest sent notice to Graphics of a $23,213 prepayment penalty. On June 23, 1992, Nat-West sent Graphics and Baystate notice that despite full payment of the Company’s indebtedness, $40,228 was still owed due to the indemnity obligation, and requested that the companies pay the fee over twelve monthly installments of $3,352.33 each. Graphics, Baystate, Gold, and Lupacchino agreed to this arrangement. However, only one installment was ever paid, by Baystate.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further], that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates the award of summary judgment. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
The First Two Loans
Neither Gold nor Lupacchino has a valid defense to NatWest’s claim for a prepayment charge based on Baystate and Graphics premature payment of the first two loans. Under New York law, a secured party’s failure to use reasonable care in the custody or preservation of collateral does constitute a defense. Marine Midland Bank v. CMR Industries, 559 N.Y.S.2d (N.Y.App.Div. 1990). The Guarantors do not claim, however, that NatWest’s failure to release collateral caused them to prepay the first two loans on March 11, 1992. (See, Lupacchino Affidavit, paragraphs 11-14 and February 21, 1992 letter to NatWest, Affidavit, Ex. 2.)
Lupacchino does assert in his affidavit that before he signed the Term Loan and Guarantee a NatWest assistant vice president told him there would be no prepayment penalty. This attempt to introduce parol evidence, however, must fail because the guarantee unambiguously obligates Gold and Lupacchino to guarantee the borrower’s liability on the notes, including payment to NatWest for any “loss of margin on reemployment of the funds . . .” which are prepaid. (Paragraphs 1 and 2 of the Term Notes.) Because the language in the agreements is clear and unambiguous, no parol evidence is permitted. Citibank v. Schaffran, 465 N.Y.S.2d 87, 87 (N.Y.App.Div. 1983). Thus, as to the first two loans, there remain no genuine issues of material fact and NatWest is entitled to judgment as a matter of law. Because the $23,213 figure submitted by NatWest to Gold and Lupacchino via facsimile has not been disputed, the court finds that Gold and Lupacchino are jointly and severably liable to NatWest in the amount of $23,213.
The Third and Fourth Loans
The guarantors assert that NatWest’s failure to release collateral necessitated their prepayment of the third and fourth loans. (Lupacchino Affidavit, para. 19.)
NatWest argues, however, that a guarantee under New York law is a wholly separate agreement from the underlying obligation, and that in any event, because Gold and Lupacchino waived all defenses, any alleged damages arising from NatWest’s failure to release certain leases as collateral cannot be used to offset any amount owed under the indemnity agreement. Nat-West is mistaken on both counts.
In Congress Factors Corp. v. Meinhard Commercial Corp., 493 N.Y.S.2d 917 (N.Y.Sup.Ct. 1985), a case cited by NatWest for the proposition that the Guarantee is wholly separate and independent from the underlying contract, the court states that a “guarantor may assert any defenses or counterclaims which are available to the principal obligor.” Congress Factors Corp. v. Meinhard Commercial Corp., 493 N.Y.S.2d 917, 920 (N.Y.App.Div. 1985), citing Walcutt v. Clevite Corp., 241 N.Y.S.2d 834 (1963). Thus, Gold and Lupacchino are free to raise any defenses that they have not waived.
NatWest argues that Gold and Lupacchino have in fact waived all defenses to this action by agreeing in the Guarantee to waive all counterclaims and setoffs. As a general rule, under New York law, it is not against public policy to waive the right to assert setoffs and counterclaims. Barclays Bank v. Heady Electric Co., 571 N.Y.S.2d 650 653 (N.Y.App.Div. 1991). This rule, however, has been nearly swallowed up by the exceptions. A waiver provision will not be enforced to bar a claim sounding in fraud or one based upon the creditor’s negligent failure to liquidate collateral upon the guarantor’s demand. Id. Further, a creditor may not use a waiver provision “to shield itself from liability if it breaches ‘the secured party’s duty to use reasonable care in the custody and preservation of collateral’ . . ." Id., quoting Marine Midland Bank v. CMR Industries, 559 N.Y.S.2d 892, 898 (N.Y.App.Div. 1990). “It is beyond cavil that ‘[a] secured party’s duty to act with due diligence, reasonableness and care may not be disclaimed by agreement.’ ” Barclays Bank v. Heady Electric Co., 571 N.Y.S.2d at 653, quoting Marine Midland Bank v. C.M.R. Industries Inc., 559 N.Y.S.2d at 898.
*19 Accordingly, as there exist genuine issues of material fact as to the course of conduct established by the parties and the reasonableness of NatWest’s refusal to release allegedly excessive leases held by NatWest as collateral,[2] summary judgment is inappropriate on the issue of Gold and Lupacchino’s liability as guarantors for the payment of prepayment charges on the third and fourth loans.
ORDER
For the reasons outlined above, National Westminster Bank’s motion for summary judgment is ALLOWED with respect to term notes Nos. 020995 and 023009, and judgment is hereby entered for National Westminster Bank in the amount of twenty three thousand two hundred and thirteen dollars ($23,213), plus interest and costs as provided by law, against third-party defendants Harold Gold and Frank Lupacchino, jointly and severally, in regard to said term notes. The motion for summary judgment with respect to the third and fourth loans (Nos. 022154 and 022825) is DENIED.

 Although this affirmative defense has not been pleaded by Gold and Lupacchino, NatWest has not raised the existence of this deficiency in its summary judgment submissions and a motion to amend their answer to include this defense will be accepted by the court.