In re EDGEWATER COVE
ASSOCIATES, L.P.,
Chapter 11, Debtor.

Edgewater Cove Associates,
L.P., Plaintiff,

v.

The May Department Store
Company, Defendant.

Bankruptcy No. 98–22557.
Adversary No. 99–2099.

United States Bankruptcy Court,
D. Connecticut.

Nov. 9, 1999.

David J. Heinlein, Barry S. Feigenbaum, Rogin, Nassau, Caplan, Lassman & Hirtle, LLC, Hartford, CT, for debtor-plaintiff.

Jeffrey J. Tinley, Tinley, Nastri, Renehan & Dost, LLP, Waterbury, CT, for defendant.

*RULINGS ON DEFENDANT'S MOTION FOR DETERMINATION OF NONCORE STATUS AND PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S DEMAND FOR JURY TRIAL*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Edgewater Cove Associates, L.P. ("Edgewater"), the debtor-in-possession and owner of a shopping center located in East Patchogue, New York ("the shopping center"), on July 7, 1999 filed a complaint against The May Department Stores Company ("May") to enforce the provisions of a lease guaranty. May, on August 17, 1999, filed an answer denying liability and demanding a jury trial. On September 3, 1999, May filed a motion to determine noncore status[1] and for this court to abstain from hearing Edgewater's complaint. On September 16, 1999, Edgewater filed a motion to strike May's demand for a jury trial. The court held a hearing on all motions on October 7, 1999, at which time the court entered an order denying May's motion for abstention. At the hearing, neither Edgewater nor May presented any testimony or submitted any exhibits on the remaining issues. The parties have filed

---

1. 28 U.S.C. § 157(b)(3) provides, in relevant part:

 The bankruptcy judge shall determine ... on timely motion of a party, whether a proceeding is a core proceeding ... or is a proceeding that is otherwise related to a case under title 11.

post-hearing memoranda of law on the issues of core/noncore status and whether May is entitled to a jury trial. Inasmuch as both matters share a common background, the court will rule on the issues in this single memorandum of decision.

## II.

### BACKGROUND

The complaint and answer have established the following undisputed factual background. Edgewater, on June 9, 1998, filed in this court a voluntary petition under Chapter 11 of the Bankruptcy Code. Edgewater's principal asset is the shopping center. On December 22, 1982, Minwick Associates, then the owner of the shopping center, as lessor, and Caldor, Inc. ("Caldor"), as lessee, executed a lease ("the lease") wherein Caldor became the tenant of a department store in the shopping center. On the same day, Associated Dry Goods Corporation ("Associated") executed an agreement ("the guaranty") guaranteeing Caldor's obligations under the lease. Associated was the predecessor-in-interest of the defendant, May. Edgewater is a subsequent purchaser of the shopping center.

In 1995, Caldor filed a petition under Chapter 11 of the Bankruptcy Code ("the Caldor bankruptcy"). The Caldor bankruptcy is presently pending in the United States Bankruptcy Court for the Southern District of New York. On June 8, 1999, Caldor applied to the court in the Caldor bankruptcy for an order authorizing Caldor to reject certain commercial leases, including the lease involved in this proceeding. On June 24, 1999, the court entered the requested order and on June 30, 1999, Caldor rejected the lease. Edgewater thereupon made demand upon May, claiming that under the terms of the guaranty, May was liable to Edgewater for Caldor's obligations under the rejected lease. After May denied liability, Edgewater filed this adversary proceeding. May admits in its answer that the document attached to the complaint as exhibit A is a copy of the guaranty at issue. There is no dispute as to the jury waiver language of Article 19 of the lease ("Article 19")[2], which both parties included in their respective memoranda of law.

## III.

### CONTENTIONS OF THE PARTIES

#### A.

To buttress its claim for noncore status, May argues that this adversary proceeding is noncore under 28 U.S.C. § 157[3] in that the effect of Bankruptcy Code § 365(g)[4] on Caldor's June 30, 1999 rejection of the lease made the rejection effective as of the date immediately prior to Caldor's filing of

2. Article 19 reads as follows:

*WAIVER OF TRIAL BY JURY*

19. (A) To the extent permitted by law, the parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Landlord and Tenant's use or occupancy of the demised premises, and/or any claim of injury or damages.

(B) Tenant hereby expressly waives, to the extent permitted by law, any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of the demised premises, by reason of the violation by Tenant of any

of the covenants or conditions of this lease, or otherwise.

For purposes of this Article 19, the term "Tenant" shall be deemed to include the Guarantor of this lease (Associated Dry Goods Corporation).

3. Under § 157, a bankruptcy judge hears both core and noncore matters, but unless waived by the parties, the bankruptcy judge, in the instance of noncore matters, submits proposed rulings to the district court for entry.

4. Section 365(g)(1) states: "... the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition; ..."

its bankruptcy petition in 1995; that, accordingly, Edgewater's claim against May arose in 1995, prior to Edgewater's bankruptcy petition; and that, as the assertion of a debtor's pre-petition state law claim against a defendant who has not filed a proof of claim, this proceeding is noncore. Edgewater contends that its complaint asserts a claim that did not arise until June 30, 1999, when Caldor rejected the lease and stopped paying rent, more than one year after Edgewater filed its petition. Edgewater argues that this adversary proceeding is a core proceeding because it concerns a claim that arose postpetition and that is central to the administration of Edgewater's bankruptcy estate.

### B.

Regarding Edgewater's motion to strike May's demand for a jury trial, Edgewater contends that, although the terms of the guaranty do not explicitly provide for a waiver of the guarantor's right to a jury, Article 19 does provide such a waiver; that the provisions of the lease and the guaranty must be construed together to determine the rights and obligations of the guarantor; and that May, as successor to Associated, is bound by the jury waiver provisions of Article 19. May initially argues that its obligations under the guaranty do not inure to the benefit of Edgewater. May further argues that because the guaranty does not explicitly provide for a waiver of the right to a jury, the court should strictly construe the language of Article 19 to waive only the jury rights of the landlord and tenant; and that Associated, as a nonsignatory to the lease, cannot be bound by its terms.[5]

### IV.

### DISCUSSION

### A.

#### Standing

■ May's opening argument, that its obligations under the guaranty do not in-

ure to the benefit of Edgewater, is, for the purpose of the present motions, unpersuasive. May does not dispute that Edgewater is the owner of the premises. N.Y. Real Prop.Law § 223 (McKinney 1989) provides: "The grantee of leased real property ... has the same remedies by entry, action or otherwise, for the nonperformance of any agreement contained in the assigned lease for the recovery of rent ... as his grantor ... had, or would have had, if the reversion had remained in him." If only by operation of this statute, Edgewater possesses the rights of the landlord under the lease, including the right to rents payable by the tenant.

May acknowledges that it is the successor to Associated. The guaranty, by its own terms, "shall be binding on the successors and assigns of the Guarantor [Associated]." (Guaranty at 1.) May, therefore, is bound by the terms of the guaranty, under which it "unconditionally guarantees the full performance and observance of all the covenants, conditions and agreements [provided in the lease] to be performed and observed by Tenant...." (*Id.*) The guaranty requires May to fulfill Caldor's obligations under the lease to pay rent to Edgewater.

### B.

#### Core/Noncore Status

■ Edgewater's complaint asserts that May is liable under the terms of the guaranty for the rental payments under the lease coming due after Caldor's rejection of the lease in the Caldor bankruptcy on June 30, 1999. May's argument that Edgewater's claim arose in 1995, immediately prior to the filing of Caldor's bankruptcy petition is without merit. Section 365(g)(1) is irrelevant to the claim asserted by Edgewater in this proceeding against May. Under the terms of the guaranty,

---

5. May's memoranda of law submitted raised a number of additional issues which the court need not consider at this time as they implicate the merits of the complaint.

Caldor and May are jointly and severally liable to Edgewater for performance of the terms of the lease, including payment of rents thereunder. Edgewater asserts that it received the rent payments through June, 1999 from Caldor, and thus it had no claim against May for any rent due prior to June 30, 1999. Edgewater's claim against May did not arise until June 30, 1999—more than one year after Edgewater filed its own bankruptcy petition—making it clearly a post-petition claim.

May relies on *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir.1993) (holding pre-petition state law claims noncore; to construe them as core would create an exception to *Marathon*[6] that would swallow the rule), and *O'Neil v. Sherman (In re TVR of America, Inc.)*, 123 B.R. 159 (Bankr.D.Conn.1991) (pre-petition state law claim was noncore) to support its contention that the constitutional constraints of *Marathon* compel a finding that the instant proceeding is noncore. May's reliance on this line of case law is misplaced. "*Marathon* and *Orion* are distinguishable on their facts from the instant case. *Marathon* and *Orion* involved pre-petition causes of action, whereas the present proceeding involves a post-petition claim. This distinction is crucial. Courts in this circuit have held that post-petition causes of action give rise to core proceedings." *Hirsch v. London Steamship Owners' Mutual Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 51 (S.D.N.Y. 1996); *see, also Caplan v. Liberty Mutual Ins. Co. (In re Century Brass Products, Inc.)*, 1992 WL 22191 (D.Conn.1992) (holding that a post-petition claim on a pre-petition contract is a core proceeding). Here, as in *Century Brass*, the debtor "had no cause of action against the defendants when it filed its Chapter 11 petition." The claim against May arose, not as of the retroactive effective date of Caldor's rejection of its obligations under the lease, but as of the date payments from Caldor ceased. As long as Edgewater was receiving rent payments from Caldor, it had no claim to assert against May. Consistent with the applicable precedents in this circuit, therefore, the court determines that this proceeding is a core matter under § 157(b)(2)(A) ("Core proceedings include but are not limited to—(A) matters concerning the administration of the estate.").

### C.

### *Jury Trial Waiver Provision*

 The lease and guaranty, executed in New York and concerning real property located in New York, are governed by New York law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law...."). May argues that because the jury trial waiver provision, Article 19, was contained in the lease, rather than in the guaranty, Article 19 should be held applicable only to the landlord and tenant, not to the guarantor. In support of this argument, May cites New York decisional law not enforcing a jury waiver where the guaranty, provided by a separate agreement from that of the underlying obligation, was silent regarding jury trials and where the underlying loan provision provided only that the landlord and tenant waived their rights to a jury trial. *See, e.g. Garsau Realty Corp. v. Kohler*, 156 Misc. 826, 282 N.Y.S. 822 (1935).

May's argument ignores New York rulings recognizing that the right to a jury trial in an action under a guaranty may be waived by a provision in the underlying loan agreement or lease. *See Franklin Nat'l Bank of Long Island v. Capobianco*, 25 A.D.2d 445, 266 N.Y.S.2d 961, 962 (1966). In *Franklin*, the guaranty was provided in a separate document from the

---

**6.** *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

underlying obligation, a loan agreement; the guaranty itself was silent with regard to jury trials, but the loan agreement provided that "the parties waive right to trial by jury;" and the loan agreement provided that its provisions were incorporated into any other instruments executed in connection with it. The New York Supreme Court, Appellate Division held "that the contention of defendants-guarantors that plaintiff's action upon the guarantee, which did not contain waivers of jury trials, precluded any reference to the loan agreement in determining defendants-guarantors' right to a jury trial is clearly untenable. The right to a jury trial may be waived in an instrument other than that representing the agreement upon which the action is founded. Further, we construe the language of the waiver to be applicable to any action involving defendants' agreements of guarantee." *Franklin*, 266 N.Y.S.2d at 962. *See also Barclays Bank of New York, N.A. v. Heady Electric Co., Inc.*, 174 A.D.2d 963, 571 N.Y.S.2d 650 (1991) (citing *Franklin* with approval).

The facts of *Franklin* are closely analogous to those of the present proceeding. In this proceeding, the guaranty provides, as to the lease, that the guarantor "unconditionally guarantees the full ... observance of all the ... agreements therein provided to be ... observed by Tenant ..." The only provision of the lease referred to by May and Edgewater is Article 19, in which "the parties [7] ... waive trial by jury" and specifically provides that "[f]or purposes of this Article 19, the term 'Tenant' shall be deemed to include the Guarantor of this lease (Associated Dry Goods Corporation)." [8] The court concludes that the jury waiver provisions of the lease were intended to be, and are applicable to the guarantor, as well as the

---

7. May argues for a narrow construction of the word "parties" but, in the absence of any provision supporting its position, the court construes "parties" to refer to the landlord and tenant.

tenant. Edgewater has supported its claim that May's demand for a jury trial be stricken.

## V.

## CONCLUSION

For the foregoing reasons, the court concludes that under May's motion for determination of noncore status, it is determined that this proceeding is a core matter, and that Edgewater's motion to strike May's demand for a jury trial be granted. It is

SO ORDERED.

---

8. The guaranty further stated: "[T]he Guarantor further represents to the Landlord ... that the Guarantor or Guarantor's wholly-owned subsidary owns all of the outstanding capital stock of the Tenant...." (Guaranty at 1.)